UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSHUA ADAM SCHULTE,

                Plaintiff,

       -v-

UNITED STATES OF AMERICA, *et al.*,

                Defendants.

21 Civ. 4042 (JMF)


**MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES OF AMERICA'S
MOTION TO DISMISS THE COMPLAINTS**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2633
E-mail: tara.schwartz@usdoj.gov


TARA SCHWARTZ
Assistant United States Attorneys
– Of Counsel –

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................... 1

   I.    PLAINTIFF'S CRIMINAL CASE AND SAMs ........................................................ 1

   II.   THE INSTANT COMPLAINTS ............................................................................. 5

LEGAL STANDARD............................................................................................................. 7

ARGUMENT ....................................................................................................................... 8

   II.   PLAINTIFF'S CLAIMS MUST BE DISMISSED BECAUSE THEY DO NOT FALL UNDER THE FTCA'S WAIVER OF SOVEREIGN IMMUNITY............................ 8

      A.   The FTCA's Waiver of Sovereign Immunity ...................................... 8

      B.   Plaintiff Failed to Plead a Physical Injury ........................................ 9

      C.   Plaintiff's Claims Do Not Have a Private Analogue ........................... 11

      D.   Plaintiff's Claims Are Barred by the Discretionary Function Exception ............. 15

CONCLUSION.................................................................................................................. 21

# TABLE OF AUTHORITIES

## Cases

*Adeleke v. United States*, 355 F.3d 144 (2d Cir. 2004)................................................................ 8

*Akutowicz v. United States*, 859 F.2d 1122 (2d Cir. 1988)........................................................ 13

*Arar v. Ashcroft*, 532 F.3d 157 (2d Cir. 2008)............................................................................ 7

*Barone v. United States,* No. 12 Civ. 4103 (LAK), 2014 WL 4467780 (S.D.N.Y. Sept. 10, 2014) ................................................................................................................................................ 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................................ 1

*Berkowitz v. United States*, 486 U.S. 531 (1988)....................................................................... 16

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). 1, 5, 6

*Bowens v. Fed. Bureau of Prisons*, No. 12 Civ. 5591, 2013 WL 3038439 (S.D.N.Y. June 18, 2013) ............................................................................................................................................. 9, 10

*C.P. Chem. Co., Inc. v. United States*, 810 F.2d 34 (2d Cir. 1987) ........................................... 12

*Caidor v. Onondaga Cty.*, 517 F.3d 601 (2d Cir. 2008) .............................................................. 7

*Calderon v. Foster*, No. 05 Civ. 696, 2007 WL 1010383 (S.D.W. Va. Mar. 30, 2007), *aff'd*, 264 F. App'x 286 (4th Cir. 2008) ................................................................................................. 10

*Carter v. United States*, 494 F. App'x 148 (2d Cir. 2012) ................................................... 11, 12

*Carter v. United States*, 694 F. App'x 918 (4th Cir. 2017) ......................................................... 9

*Castro v. United States*, 34 F.3d 106 (2d Cir. 1994) .......................................................... 12, 13

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ...................................................... i

*Chen v. United States*, 854 F.2d 622 (2d Cir. 1988)........................................... 11, 12, 13, 14

*Christensen v. United States*, No. 14 Civ. 134, 2015 WL 1914337 (E.D. Ky. Apr. 27, 2015) .... 10

*Coulthurst v. United States*, 214 F.3d 106 (2d Cir. 2000) ........................................................ 16

*Cravero v. United States*, No. 16 Civ. 161726, 2020 WL 4288448 (C.D. Cal. Apr. 24, 2020) ... 10

*De Masi v. Schumer*, 608 F. Supp. 2d 516 (S.D.N.Y. 2009) ........................................................ 8

*Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999)............................................................ 8

*Diaz v. United States*, 517 F.3d 608 (2d Cir. 2008)..................................................................... 8

*Dorking Genetics v. United States*, 76 F.3d 1261 (2d Cir. 1996)................................................ 11

*Enigwe v. Zenk*, No. 03 Civ. 854 (CBA), 2007 WL 2713849 (E.D.N.Y. Sep. 14, 2007) ........... 17

*FDIC v. Meyer*, 510 U.S. 471 (1994) ................................................................................... 11, 12

*Fernandini v. United States*, No. 1:15 Civ. 3843 (GHW), 2019 WL 1033797 (S.D.N.Y. Mar. 5, 2019) ............................................................................................................................................. 17, 19

*Fiore v. Medina*, No. 11 Civ. 2264 (RJS), 2012 WL 4767143 (S.D.N.Y. Sept. 27, 2012) .... 13, 15

*Francis v. United States*, 3:10 Civ. 1474, 2011 WL 3563146 (D. Conn. Aug. 12, 2011)........... 20

*Greig v. Goord*, 169 F.3d 165 (2d Cir. 1999)............................................................................ 10

*Hamm v. United States*, 483 F.3d 135 (2d Cir. 2007)................................................................. 8

*Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000) ..................................................................... 10

*Hernandez v. United States*, 939 F.3d 191 (2d Cir. 2019)................................................... 12, 13

*Jones v. United States*, No. 09-00976, 2011 WL 2117603 (W.D. La. May 4, 2011).................. 20

*Klopp v. United States*, 131 F.3d 131 (2d Cir. 1997)................................................................. 12

*Lineberry v. United States*, No. 3:08 Civ. 0597-G, 2009 WL 763052 (N.D. Tex. Mar. 23, 2009) ................................................................................................................................. 20

*Liranzo v. United States*, 690 F.3d 78 (2d Cir. 2012) ................................................. 8, 11, 12, 14

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) ................................................ 8

*Martinez v. Aycock-West.*, 164 F. Supp. 3d 502 (S.D.N.Y. 2016) .................................. 7

*McGowan v. United States*, 825 F.3d 118 (2d Cir. 2016) ............................................... 14

*Molchatsky v. United States*, 713 F.3d 159 (2d Cir. 2013) ............................................ 16

*Morgan v. Shivers*, No. 1:14 Civ. 7921 (GHW), 2018 WL 618451 (S.D.N.Y. Jan. 29, 2018).... 15

*Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167 (2d Cir. 2008) .............................. 7

*Nakamura v. United States*, No. 10 Civ. 2797, 2012 WL 1605055 (E.D.N.Y. May 8, 2012) ..... 12

*Negron v. United States,* No. 19 Civ. 5442 (PMH), 2020 WL 5634304 (S.D.N.Y. Sep. 21, 2020) ....................................................................................................................... 9, 10, 15

*Ojo v. United States*, No. 16 Civ. 4112 (MKB) (LB), 2019 WL 3852391 (E.D.N.Y. Aug. 15, 2019), *report and recommendation adopted*, 2019 WL 4602823 (E.D.N.Y. Sept. 23, 2019) ....................................................................................................................... 17, 18

*Ojo v. United States*, No. 16 Civ. 4112 (MKB) (LB), 2020 WL 828076 (E.D.N.Y. Feb. 20, 2020) ................................................................................................................................. 13, 14

*Ortiz v. United States*, No. 01 Civ. 4665 (AKH), 2002 WL 1492115 (S.D.N.Y. July 11, 2002) 16, 17, 18

*Paulino-Duarte v. United States*, No. 02 Civ. 9499 (RCC), 2003 WL 22533401 (S.D.N.Y. Nov. 7, 2003) .................................................................................................................... 20

*Perez v. United States*, 330 F. App'x 388 (3rd Cir. 2009) ............................................. 9

*Powers v. Karen*, 768 F. Supp. 46 (E.D.N.Y. 1991) ...................................................... 13

*Presidential Gardens Assocs. v. U.S. ex rel. Sec. of Hous. & Urban Dev.*, 175 F.3d 132 (2d Cir. 1999) ............................................................................................................... 8

*Ramirez v. State*, 655 N.Y.S.2d 791 (N.Y. Ct. Cl. 1997) .............................................. 14

*Rayonier Inc. v. United States*, 352 U.S. 315 (1957) .................................................... 11

*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502 (2d Cir. 1994) ........................ 13

*Ross v. United States*, No. 13 Civ. 573-A, 2013 WL 5290498 (N.D. Tex. Sept. 18, 2013) ......... 20

*Scrima v. Hasty*, No. 97 Civ. 8433 (JGK), 1998 WL 661478 (S.D.N.Y. Sept. 24, 1998) ........... 17

*Smith v. Snyder*, No. Civ. A. 05 Civ. 325 (JBC), 2006 WL 379516 (E.D. Ky. Feb. 15, 2006).... 20

*Sykes v. Bank of Am.*, 723 F.3d 399 (2d Cir. 2013) ...................................................... 7

*Turner v. Safley*, 482 U.S. 78 (1987) ........................................................................... 19

*United States v. Gaubert*, 499 U.S. 315 (1991) ............................................................ 16

*United States v. Mitchell*, 445 U.S. 535 (1980). ........................................................... 8

*United States v. Nordic Vill., Inc.*, 503 U.S. 30 (1992) ................................................. 8

*United States v. Olson*, 546 U.S. 43 (2005) ............................................................. 11, 14

*United States v. Varig Airlines*, 467 U.S. 797 (1984) ................................................... 15

*USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia*, 681 F.3d 103 (2d Cir. 2012) ................................................................................................................................. 16

*Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) .......................................................... 7

*Watson v. United Sta*tes, 865 F.3d 123 (2d Cir. 2017) ................................................... 14

*White v. Firth*, No. 14 Civ. 308, 2014 WL 7074602 (E.D. Ky. Dec. 15, 2014) .......................... 10

*Winters v. United States*, No. 10 Civ. 7571 (JMF), 2013 WL 1627950 (S.D.N.Y. Apr. 16, 2013)
........................................................................................................................ 17, 18

**Statutes**

18 U.S.C. § 4042 ..................................................................................................... 16, 17

28 U.S.C. § 1346 ....................................................................................................... 1, 9, 11

28 U.S.C. §§ 2671 *et seq* ..................................................................................... 1, 9, 11, 15

42 U.S.C. § 1997e ............................................................................................................ 6, 9

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................................ 1, 8, 9

Defendant United States of America (the "Government") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff Joshua Schulte's complaints, in this consolidated action, pursuant to Federal Rule of Civil Procedure 12(b)(1).

## PRELIMINARY STATEMENT

Plaintiff filed these actions against the United States and various individuals pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq*., and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), arising out of his conditions of confinement at the Metropolitan Correctional Center ("MCC") from October 2018 through July 2021. The Court has already dismissed Plaintiff's *Bivens* claims for failure to plead personal involvement of any of the individual defendants or identify the John Doe defendants. Plaintiff's remaining claims against the Government are barred by sovereign immunity. As explained more fully below, Plaintiff fails to properly invoke the FTCA because his claims: (i) do not involve physical injury; (ii) state only constitutional claims which are not cognizable under the FTCA; and (iii) fall within the discretionary function exception to the FTCA. Accordingly, Plaintiff's complaints should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

## BACKGROUND[1]

### I.  PLAINTIFF'S CRIMINAL CASE AND SAMs

On August 24, 2017, Plaintiff was arrested on child pornography charges. (*See* 17 Cr. 548, ECF No. 1, ECF Entry at 8/24/2017).[2] Initially, Plaintiff was ordered detained pending trial (*see*

---

[1]     For purposes of this motion, the Government accept Plaintiff's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).
[2]     Unless otherwise specified, all citations to ECF in this section refer to the docket in *United States v. Schulte*, 17 Cr. 548 (JMF).

ECF No. 5), but on September 13, 2017, the Court bailed Plaintiff with strict conditions, including a prohibition on possessing or using a computer, computer network, or the Internet without express authorization from Pretrial Services (*see* ECF No. 8). On January 8, 2018, the Court determined that Plaintiff violated his bail conditions by using the Internet without authorization and was a danger to the community, and ordered his detention. (*See* ECF No. 29).

On June 18, 2018, the Government superseded the indictment to add charges stemming from Plaintiff's theft of national defense information from the Central Intelligence Agency ("CIA") and subsequent transmission of that information to Wikileaks. (*See* ECF No. 47). At that time, Plaintiff was housed in general population at the MCC.

Then, on October 31, 2018, the Government superseded the indictment again to charge Plaintiff with: (i) violating the protective order entered in the criminal case by leaking a search warrant to *The New York Times* and *The Washington Post* and encouraging his family members to disseminate the search warrants (the "Contempt Count"); and (ii) smuggling contraband cell phones into the MCC to leak additional classified information to a reporter (the "MCC Leak Count"). (ECF No. 68).

Following the Government's discovery of the conduct that led to the MCC Leak Count and the Contempt Count, the U.S. Attorney's Office—in coordination with the Federal Bureau of Investigation ("FBI") and the Department of Justice's Counterintelligence and Export Control Section of the National Security Division—requested the imposition of Special Administrative Measures ("SAMs"). (*See* ECF No. 92 at 124-140 ("SAMs Directive")). On or about October 26, 2018, the Attorney General issued a written memorandum directing the Bureau of Prisons ("BOP") to implement the SAMs. (*Id.*). The memorandum stated that the Director of the CIA had certified "that the implementation of [SAMs] is reasonably necessary to prevent disclosure of classified

information by [Plaintiff], and that the disclosure of such information would pose a threat to national security." (*Id*. at 1).

The SAMs limit Plaintiff's contacts and communications with others because such communications could result in the unauthorized disclosure of classified information. Except as allowed by the SAMs, Plaintiff is barred from "having contact (including passing or receiving any oral, written or recorded communications) with any other inmate, visitor, attorney, or anyone else . . . that could reasonably foreseeably result in [Plaintiff] communicating (sending or receiving) information that could circumvent the SAM's intent of significantly limiting [Plaintiff's] ability to communicate (send or receive) classified information." (*Id*. at ¶ 1(c)). The SAMs prohibit Plaintiff from being housed or communicating with another inmate. (*See id*. ¶ 6). They also: delegate to the BOP, United States Marshals Service ("USMS"), and relevant detention facility, here the MCC, the determination as to whether Plaintiff's attorney-client visits may be contact or non-contact, (*id*. ¶ 2(b)); prohibit Plaintiff from having telephone calls with anyone other than his legal team and family members, permit the FBI to monitor and/or record Plaintiff's non-legal telephone calls, and delegate to the USMS, BOP, and detention facility the quantity and duration of Plaintiff's calls, with a minimum of one call per month, (*see id*. ¶ 3); permit non-legal visits only with Plaintiff's immediate family members, require such visits to be non-contact, and permit for the USMS, BOP, detention facility, FBI, and CIA to monitor such visits, (*see id*.); require that Plaintiff's incoming and outgoing mail be analyzed by the government, (*see id*. ¶ 3(g)(iii)-(iv)); and prohibit Plaintiff from communicating with the news media, (*id*. ¶ 4), engaging in group prayer with other inmates, (*id*. ¶ 5), and having access to news publications or books that could be determined "to facilitate criminal activity or be detrimental to national security, the security, good order, or discipline of the institution or the protection of the public," (*id*. at ¶¶ 8(a), 9).

Upon imposition of the SAMs Plaintiff was moved to 10 South, the most restrictive Special Housing Unit at MCC, where his contacts and communications with others were severely limited. Plaintiff remained in 10 South until around October 2021, at which time he was transferred to the Metropolitan Detention Center ("MDC").

On May 10, 2019, Plaintiff moved to vacate the SAMs on the grounds that they are unconstitutional punishment and not reasonably necessary to prevent the disclosure of classified information. (*See* ECF No. 92). The Government opposed the motion. (*See* ECF No. 96). On August 14, 2019, the Court denied Plaintiff's motion except modified the SAMs in two limited respects: first, to permit precleared non-attorney members of Plaintiff's legal team to disclose his communications for the sole purpose of preparing his defense, following consultation with and authorization by Plaintiff's cleared attorneys; and second, to permit Plaintiff monitored contacts (calls, visits, and mail) with non-immediate family members. (*See* ECF No. 127). In largely upholding the SAMs, the Court noted that "[t]he SAMs are undoubtedly restrictive, but generally they are reasonably necessary to avoid further disclosure of classified information." (*Id*. at 8).

In February and March 2020, the Government tried Plaintiff on the second superseding indictment. On March 9, 2020, the jury returned a verdict finding Plaintiff guilty on the Contempt Count as well as on a count of making false statements to the FBI, in violation of 18 U.S.C. § 1001 (the "False Statement Count"). (ECF No. 351). The jury did not reach a verdict on the remaining eight counts, and the Court declared a mistrial on those eight counts. (*See id*.). Plaintiff has yet to be sentenced on the Contempt Count and False Statement Count. (*See* ECF No. 519 (September 29, 2021 order denying Plaintiff's motion to schedule sentencing on the convicted counts prior to his trial on the remaining counts)).

On June 24, 2021, Plaintiff filed a second motion to vacate the SAMs. (*See* ECF No. 474). The Government opposed the motion, which the Court denied on October 6, 2021. (*See* ECF No. 527). Accordingly, at all times relevant to the allegations at issue, Plaintiff has been subject to the SAMs.

## II.     THE INSTANT COMPLAINTS

During June and July 2021, Plaintiff filed twelve complaints relating to his conditions of confinement at the MCC beginning in October 2018, the time at which the SAMs were imposed. He purports to bring all of his claims against the United States and various federal employees pursuant to the FTCA and *Bivens* for violations of his constitutional rights. Plaintiff's complaints allege as follows:

➢ No. 21 Civ. 4042, ECF No. 1. Defendants blacked out Plaintiff's windows to prevent him from looking outside, prohibited outside recreation, and failed to take Plaintiff to inside recreation as requested, in violation of his Fifth and Eighth Amendment rights. As a result, he has suffered permanent psychological damage and damage to his health.

➢ No. 21 Civ. 4800, ECF No. 2. Defendants delayed Plaintiff's incoming and outgoing mail, in violation of his First, Fourth, and Sixth Amendment rights. He has suffered damages resulting from his denial of access to the courts and his inability to assist in his own defense.

➢ No. 21 Civ. 5061, ECF No. 1. Defendants denied Plaintiff a random assortment of commissary items as punishment.

➢ No. 21 Civ. 5168, ECF No. 1. Defendants banned Plaintiff from the MCC library and restricted his access to the electronic law library and legal materials, in violation of his First, Fifth, Sixth, and Eighth Amendment rights. As a result, he has suffered permanent psychological damage.

➢ No. 21 Civ. 5173, ECF No. 1. Defendants subjected Plaintiff to constant lighting inside his cell and did not provide him with a light switch to toggle the lights off, in violation of his Fifth and Eighth Amendment rights. As a result, he has suffered permanent psychological damage from constant sleep deprivation and torture.

➢ No. 21 Civ. 5213, ECF No. 1. Defendants banned Plaintiff from watching television, in violation of his Fifth Amendment rights. As a result, he has suffered permanent psychological damage.

➢ No. 21 Civ. 5313, ECF No. 1. Defendants violated the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), and federal regulations implementing the BOP's administrative remedy process by: (1) failing to reply to his administrative remedy filings in a timely manner; (2) changing the administrative remedy process in 2019; (3) denying inmates access to the BOP's administrative remedy forms; and (4) using carbon copy technology, instead of an electronic system, for the filing of administrative remedies. Plaintiff claims that this violates his Fifth Amendment rights and has caused him permanent psychological damage and emotional distress.

➢ No. 21 Civ. 5554, ECF No. 1. Defendants banned Plaintiff from religious services, in violation of his First and Fifth Amendment rights. As a result, Plaintiff suffered permanent psychological damage.

➢ No. 21 Civ. 5722, ECF No. 2. Defendants denied Plaintiff full-contact legal visits including the passing of documents, in violation of his Fifth and Sixth Amendment right to assist in his own defense.

➢ No. 21 Civ. 5851, ECF No. 2. Defendants punished Plaintiff with dysfunctional plumbing and abnormal sinks, showers, and toilets, in violation of his Fifth and Eighth Amendments rights. Plaintiff became sick as a result of backed up sewage.

➢ No. 21 Civ. 5871, ECF No. 2. Defendants reduced Plaintiff's phone minutes from 300 to 30 per month, reduced his visits from weekly full-contact unmonitored visits to monthly no-contact monitored visits, and denied him access to email with his attorneys and family, in violation of his First, Fifth, and Sixth Amendment rights. As a result, Plaintiff has been prevented from assisting in his own defense.

➢ No. 21 Civ. 6504, ECF No. 2. Defendants exposed Plaintiff to extreme cold in the winter and extreme heat in the summer, in violation of his Fifth and Eighth Amendment rights. As a result, Plaintiff experienced pain and suffering.

All of Plaintiff's complaints seek injunctive and monetary relief.

On November 10, 2021, the Court issued an order of service in which it denied Plaintiff's claims for injunctive relief, as such relief is unavailable under the FTCA or *Bivens*. (No. 21 Civ. 4042, ECF No. 9). The Court also held that Plaintiff's requests for injunctive relief arising out of his detention at the MCC were mooted by his transfer to the MDC. (*Id.*). Further, the Court held that Plaintiff failed to state a *Bivens* claim as he did not allege the personal involvement of any of the individual defendants and failed to provide identifying information for the John Doe defendants. (*Id.*). Accordingly, the Court declined to issue an order pursuant to *Valentin v.*

*Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997), or to order service on Officer Edge. Thus, Plaintiff's only remaining claims are his FTCA claims against the United States. (*Id.*). On January 12, 2021, the Court granted the Government's motion to consolidate Plaintiff's actions pursuant to Federal Rule of Civil Procedure 42. (No. 21 Civ. 4042, ECF No. 18).

## LEGAL STANDARD

On a Rule 12(b)(1) motion, "[d]etermining the existence of subject matter jurisdiction is a threshold inquiry . . . and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (citation and internal quotation marks omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and internal quotation marks omitted).

In a case brought by a *pro se* plaintiff, the Court must "construe [ ] [the] [Complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Martinez v. Aycock-West.*, 164 F. Supp. 3d 502, 508 (S.D.N.Y. 2016) (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)). But "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Id.* (quotation omitted) (citing *Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[*P*]*ro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them.")).

**ARGUMENT**

## II. PLAINTIFF'S CLAIMS MUST BE DISMISSED BECAUSE THEY DO NOT FALL UNDER THE FTCA'S WAIVER OF SOVEREIGN IMMUNITY

### A. The FTCA's Waiver of Sovereign Immunity

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (internal quotation marks omitted); *see also Diaz v. United States*, 517 F.3d 608, 611 (2d Cir. 2008) (same). "The waiver of sovereign immunity is a prerequisite to subject matter jurisdiction." *Presidential Gardens Assocs. v. U.S. ex rel. Sec. of Hous. & Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999). Thus, "[t]o establish that subject matter jurisdiction exists for a suit, Plaintiff must identify an applicable waiver of the Government's sovereign immunity; otherwise, the Court must dismiss the suit, pursuant to Rule 12(b)(1)." *De Masi v. Schumer*, 608 F. Supp. 2d 516, 524 (S.D.N.Y. 2009) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "[W]aivers of sovereign immunity must be 'unequivocally expressed' in statutory text, and cannot simply be implied." *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (quoting *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33 (1992)). Moreover, a plaintiff bears the burden to demonstrate that sovereign immunity has been waived. *See Makarova*, 201 F.3d at 113 ("[T]he plaintiff bears the burden of establishing that [his or] her claims fall within an applicable waiver.").

The FTCA "'constitutes a limited waiver by the United States of its sovereign immunity and allows for a tort suit against the United States under specified circumstances.'" *Liranzo v. United States*, 690 F.3d 78, 85 (2d Cir. 2012) (quoting *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007)). Specifically, the FTCA waives the Government's sovereign immunity for claims: "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death, [4] caused by the negligent or wrongful act or omission of any employee

of the Government, [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *see also* 28 U.S.C. § 2674 ("[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ."). If an FTCA claim does not fit within the circumstances specified by the statutory regime, a district court does not have subject matter jurisdiction over the claim, and it must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

### B.     Plaintiff Failed to Plead a Physical Injury

The FTCA provides that "[n]o person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody *without a prior showing of physical injury* . . . .". 28 U.S.C. § 1346(b)(2) (emphasis added); *see also* PLRA, 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. . . ."). This express statutory limitation on the scope of FTCA liability prevents a plaintiff from pursing relief under the FTCA absent a showing that physical injuries occurred in custody. *See Negron v. United States,* No. 19 Civ. 5442 (PMH), 2020 WL 5634304, at *4 (S.D.N.Y. Sep. 21, 2020) (citing *Bowens v. Fed. Bureau of Prisons*, No. 12 Civ. 5591, 2013 WL 3038439, at *9 (S.D.N.Y. June 18, 2013); *see also e.g., Carter v. United States*, 694 F. App'x 918, 922 (4th Cir. 2017) (noting physical injury requirement under 28 U.S.C. § 1346(b)(2) for prisoner asserting FTCA claim); *Perez v. United States*, 330 F. App'x 388, 389 (3rd Cir. 2009) (same); *Cravero v. United States*, No. 16 Civ.

161726, 2020 WL 4288448, at *2 (C.D. Cal. Apr. 24, 2020) (same); *Christensen v. United States*, No. 14 Civ. 134, 2015 WL 1914337, at *4 (E.D. Ky. Apr. 27, 2015) (same)).

Plaintiff plainly falls within the scope of this provision, as he was convicted, on March 9, 2020, of the Contempt Count and False Statement Count (*see* ECF No. 351), for which he is awaiting sentencing (*see* ECF No. 519). Thus, at the time he filed these actions, in June and July 2021, he had been convicted of a felony. *Cf. Greig v. Goord*, 169 F.3d 165, 166 (2d Cir. 1999) (holding that it is the plaintiff's confinement status at the time he files the federal action that determines whether the PLRA's exhaustion requirement applies); *Harris v. Garner*, 216 F.3d 970, 975 (11th Cir. 2000) (For purposes of the PLRA, "[i]t is confinement status at the time the lawsuit is 'brought,' i.e., filed, that matters."). He has been in custody at all times relevant to the complaints.

Plaintiff does not allege anywhere in his complaints that he suffered any physical injuries as a result of any of Defendants' actions or conduct. Plaintiff's alleged injuries consist of: (i) psychological damage; (ii) his inability to assist in his own defense; (iii) pain and suffering; and (iv) unspecified damage to his health. These injuries do not suffice to meet the physical injury requirement of the FTCA. *See Negron*, 2020 WL 5634304, at *5 ("allegation that [plaintiff] 'suffered pain and agony being away from his family' is not a physical injury and thus is insufficient to satisfy the requirements for an FTCA claim"); *Bowens,* 2013 WL 3038439, at *9 (denying inmate relief under FTCA for claims of emotional injury); *see also White v. Firth*, No. 14 Civ. 308, 2014 WL 7074602, at *3 (E.D. Ky. Dec. 15, 2014) ("[A]llegations of emotional distress do not provide a basis for recovery under the FTCA."); *Calderon v. Foster*, No. 05 Civ. 696, 2007 WL 1010383, at *8 (S.D.W. Va. Mar. 30, 2007), *aff'd*, 264 F. App'x 286 (4th Cir. 2008)

(finding that allegations of *de minimis* physical injuries are insufficient "to recover damages for mental and emotional injuries" under the FTCA).

Accordingly, Plaintiff's complaints must be dismissed because he has failed to allege a physical injury that would invoke the FTCA's waiver of the Government's sovereign immunity.

### C.    Plaintiff's Claims Do Not Have a Private Analogue

### i.    The FTCA's Private Analogue Requirement

The FTCA's waiver of sovereign immunity extends only to claims for which a private analogue exists—that is, the waiver extends only to claims that could be brought against a private individual under like circumstances in accordance with the law of the place where the act or omission occurred. *See Liranzo*, 690 F.3d at 83 (citing 28 U.S.C. §§ 1346(b)(1), 2674); *see Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) ("[F]or liability to arise under the FTCA, a plaintiff's cause of action must be 'comparable' to a 'cause of action against a private citizen' recognized in the jurisdiction where the tort occurred."). This "private analogue" requirement asks "'whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred.'" *Dorking Genetics v. United States*, 76 F.3d 1261, 1266 (2d Cir. 1996) (quoting *Rayonier Inc. v. United States*, 352 U.S. 315, 319 (1957)).

In imposing the private analogue requirement, the FTCA directs courts to look "to the state-law liability of private entities, not to that of public entities." *Liranzo*, 690 F.3d at 86 (citing *FDIC v. Meyer*, 510 U.S. 471, 478 (1994) and *United States v. Olson*, 546 U.S. 43, 46 (2005)); *see also Carter v. United States*, 494 F. App'x 148, 149 (2d Cir. 2012) (summary order) ("To satisfy the private analogue requirement, the plaintiff must show that his claim is comparable to a cause of action against a private citizen recognized in the jurisdiction where the tort occurred, and his

allegations, taken as true, . . . satisfy the necessary elements of that comparable state cause of action." (citation and internal quotation marks omitted)).

The FTCA "does not waive sovereign immunity for claims against the government based on governmental 'action of the type that private persons could not engage in and hence could not be liable for under local law.'" *Liranzo*, 690 F.3d at 86 (quoting *Chen*, 854 F.2d at 626). Thus, regarding certain "governmental functions, the United States cannot be held liable, for no private analog[ue] exists." *C.P. Chem. Co., Inc. v. United States*, 810 F.2d 34, 37 (2d Cir. 1987); *see Nakamura v. United States*, No. 10 Civ. 2797, 2012 WL 1605055, at *3 (E.D.N.Y. May 8, 2012) ("A court considers whether or not a private person analog[y] exists for the government conduct at issue . . . or whether the plaintiff is complaining of conduct governed exclusively by federal law or . . . conduct of a governmental nature of function that has no analogous liability in the law of torts." (internal citation and quotation marks omitted) (alteration in original)).

Ultimately, if there is no private analogue under the applicable state law, the FTCA claim will be dismissed for lack of subject-matter jurisdiction. *See Carter*, 494 F. App'x at 150-51 (dismissing FTCA claim because plaintiff failed to satisfy private analogue requirement); *Klopp v. United States*, 131 F.3d 131, 131 (2d Cir. 1997) (unpublished table decision) (dismissing FTCA claim in part because plaintiff failed to meet private analogue requirement).

As a result of the private analogue requirement, the Supreme Court has specifically held that the FTCA's waiver of sovereign immunity does *not* extend to constitutional claims against the United States. *FDIC*, 510 U.S. at 478 (because "[b]y definition, federal law, not state law, provides the source of liability for a [constitutional tort] claim," it thus follows that a "constitutional tort claim is not cognizable under [Section] 1346(b)"); *see also Hernandez v. United States*, 939 F.3d 191, 205 (2d Cir. 2019) ("The FTCA 'has not waived [the United States'] sovereign immunity

with respect to claims that its employees have committed constitutional torts' under the federal constitution." (quoting *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994)); *see also, e.g., Ojo v. United States*, No. 16 Civ. 4112 (MKB) (LB), 2020 WL 828076, at *13 (E.D.N.Y. Feb. 20, 2020) ("To the extent Plaintiff asserts a claim pursuant to the FTCA based on Defendants having allegedly violated his constitutional rights under the Due Process Clause of the Fifth Amendment, such a claim lacks a private analogue because the Due Process Clause governs state actions."). Further, criminal statutes prohibiting deprivation of rights under color of law do not provide private causes of action, *see Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994); *Powers v. Karen*, 768 F. Supp. 46, 51 (E.D.N.Y. 1991) (holding that criminal statutes governing conspiracies against civil rights and deprivation of rights under color of law do not provide for private rights of action), and thus cannot provide the necessary analogue for an FTCA claim.

In sum, "'[t]he FTCA does not extend to conduct governed exclusively by federal law, or to conduct of a governmental nature or function that has no analogous liability in the law of torts.'" *Fiore v. Medina*, No. 11 Civ. 2264 (RJS), 2012 WL 4767143, at *8 (S.D.N.Y. Sept. 27, 2012) (quoting *Akutowicz v. United States*, 859 F.2d 1122, 1125 (2d Cir. 1988)).

### ii.        There is No Private Analogue for Plaintiff's Constitutional Claims

Since Plaintiff's complaints all allege constitutional violations arising out of his conditions of confinement at the MCC—specifically, violations of the First, Fourth, Fifth, Sixth, and Eighth Amendments—they do not raise claims for which the United States has waived sovereign immunity under the FTCA. *Castro*, 34 F.3d at 110 (holding FTCA does not waive sovereign immunity for constitutional claims). The same would be true to the extent Plaintiff's complaints were construed as raising violations of the New York State's constitution, *see Hernandez*, 939 F.3d at 205, or federal law, *see Chen*, 854 F.2d at 626.

To the extent Plaintiff's complaints could be construed liberally to raise tort claims, his complaints would still fail to establish a waiver of sovereign immunity pursuant to the FTCA because they lack a private analogue. The private analogue inquiry asks whether "local law would make a '*private person*' liable in tort." *Olson*, 546 U.S. at 44 (emphasis in original); *cf. Liranzo*, 690 F.3d at 94-95 (focusing on state-law liability of a person acting "entirely in his or her private capacity"). Because private persons cannot establish facilities to detain other persons, there are no circumstances in state tort law that are analogous to claims challenging conditions of detention. *McGowan v. United States*, 825 F.3d 118, 126-27 (2d Cir. 2016).

In *McGowan*, the plaintiff asserted an FTCA claim for wrongful confinement in solitary confinement, a tort recognized by some New York courts, *see, e.g., Ramirez v. State*, 655 N.Y.S.2d 791, 794 (N.Y. Ct. Cl. 1997). The Second Circuit held that such a claim was not cognizable under the FTCA because a claim for wrongful confinement could not be brought against a *private* person. 825 F.3d 126-27 ("[T]he tort of wrongful confinement [in solitary confinement] lacks a private analogue" and therefore fails to provide a cause of action under the FTCA.); *see also Ojo,* 2020 WL 828076, at *4, 8 (holding that there is no private analogue for claim of wrongful confinement in the segregated housing unit).

The *McGowan* Court further rejected the plaintiff's negligence claim premised on the BOP's failure to follow its own internal regulations because he failed to establish that New York law recognizes a freestanding duty to abide by private regulations. 825 F.3d 126-27; *see also Watson v. United S*tates, 865 F.3d 123, 135 (2d Cir. 2017) (finding no private analogue under New York law for plaintiff's claim that ICE failed to follow its own internal directives); *Chen*, 854 F.2d at 626-27 ("None of the New York cases cited by [plaintiff], and no case we have discovered, recognizes a cause of action in tort for an association's violation of its own rules."); *see also*

*Negron,* 2020 WL 5634304, at *5 ("[b]ecause New York does not recognize a duty to follow private regulations, [Plaintiff] cannot ground his negligence claim[s] on [BOP's] failure to follow his own directives."); *Morgan v. Shivers*, No. 1:14 Civ. 7921 (GHW), 2018 WL 618451, at *10 (S.D.N.Y. Jan. 29, 2018) (holding plaintiff lacked a private analogue under New York law for claim that BOP officers violated BOP regulations); *Fiore*, 2015 WL 1196592, at *8 (finding no private analogue for negligence claim based on failure to provide notice of prison rules and regulations).

Since Plaintiff's claims arise out of his detention, a governmental function, and the BOP's failure to follow its own internal regulations on prison grievances, Plaintiff claims lack a private analogue. Since Plaintiff has failed to plead a tort claim that could invoke the FTCA's waiver of the United States' sovereign immunity, his complaints should be dismissed for lack of subject matter jurisdiction.

### D.     Plaintiff's Claims Are Barred by the Discretionary Function Exception

The FTCA's "discretionary function" exception to the Government's limited waiver of sovereign immunity bars liability for "any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved be abused." *See* 28 U.S.C. § 2680(a).   The discretionary function exception marks the boundary between Congress's willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals; it is, moreover, intended to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. *United States v. Varig Airlines*, 467 U.S. 797, 808, 814 (1984). Thus, the discretionary function exception "precludes

claims based on day-to-day management decisions if those decisions require judgment as to which of a range of permissible course is the wisest." *Ortiz v. United States*, No. 01 Civ. 4665 (AKH), 2002 WL 1492115, at *2 (S.D.N.Y. July 11, 2002) (citing *United States v. Gaubert*, 499 U.S. 315, 325 (1991)). A plaintiff bears "the initial burden to state a claim that is not barred by the [discretionary function exception]." *Molchatsky v. United States*, 713 F.3d 159, 162 (2d Cir. 2013).

Courts decide whether the discretionary function exemption applies according to the so-called *Berkovitz-Gaubert* test, a reference to *Berkowitz v. United States*, 486 U.S. 531 (1988), and *United States v. Gaubert*, 499 U.S. 315 (1991). Under that test, the exception applies when two conditions are met: "'(1) the acts alleged to be negligent must be discretionary, in that they involve an element of judgment or choice and are not compelled by statute or regulation, and (2) the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis.'" *USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia*, 681 F.3d 103, 111-12 (2d Cir. 2012) (quoting *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000)). An act is "discretionary" if it is not "compelled by statute or regulation"—that is, if an employee has some "rightful option" other than to "adhere to the directive" of a statute or regulation. *Gaubert*, 499 U.S. at 322. Whether an act is "grounded in considerations of public policy or susceptible to policy analysis" is evaluated based on "the nature of the actions taken," not "the agent's subjective intent in exercising the discretion." *Id*. at 325. If a statute or regulation confers discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id*. at 324.

Pursuant to statute, the BOP has "charge of the management and regulation of all Federal penal and correctional institutions," 18 U.S.C. § 4042(a)(1), and must "provide suitable quarters

and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States," *id.* § 4042(a)(2). The statute "does not direct the BOP how to fulfill [these] duties, nor does the statute mandate particular conduct by the BOP"; rather, "[t]he statute gives the BOP officials great discretion to administer their duties as they see fit." *Ojo v. United States*, No. 16 Civ. 4112 (MKB) (LB), 2019 WL 3852391, at *7 (E.D.N.Y. Aug. 15, 2019), *report and recommendation adopted*, 2019 WL 4602823 (E.D.N.Y. Sept. 23, 2019); *Winters v. United States*, No. 10 Civ. 7571 (JMF), 2013 WL 1627950, at *5 (S.D.N.Y. Apr. 16, 2013) ("Section 4042 'does not set forth the particular manner by which the BOP must fulfill this duty,' it 'leaves judgment or choice to the BOP officials.'" (quoting *Ortiz v. United States*, No. 01 Civ. 4665 (AKH), 2002 WL 1492115, at *3 (S.D.N.Y. July 11, 2002)); *see also Fernandini v. United States*, No. 1:15 Civ. 3843 (GHW), 2019 WL 1033797, at *4 (S.D.N.Y. Mar. 5, 2019) (Section 4042(a)(2) "does not define what constitutes 'suitable quarters,' nor does it mandate how the Bureau of Prisons should accomplish the goal of providing such quarters and providing for the safekeeping of persons committed to the Bureau. As a result, in general, decisions regarding the best way to comply with this broad statutory mandate are discretionary in nature."); *Enigwe v. Zenk*, No. 03 Civ. 854 (CBA), 2007 WL 2713849, at *8 (E.D.N.Y. Sep. 14, 2007) (noting that "in general decisions regarding the best way to safeguard prisoners are discretionary in nature"); *Scrima v. Hasty*, No. 97 Civ. 8433 (JGK), 1998 WL 661478, at *3 (S.D.N.Y. Sept. 24, 1998) ("The absence of specific guidelines of appropriate conduct by BOP officials in administering" their duties to provide suitable quarters and provide for the safekeeping, care, and subsistence of inmates "leaves judgment or choice to BOP officials").

Further, the SAMs Directive, pursuant to which Plaintiff is maintained in segregated housing, provides the BOP with substantial discretion as to how to implement the SAMs. For

example, the SAMS Directive: (i) instructs the USMS, BOP, and detention facility to take "reasonable efforts" to limit the plaintiff's contact with any other inmate, visitor, attorney, etc., (SAMs Directive ¶ 1(c)); (ii) permits attorney-client privileged visits to be contact or non-contact "at the discretion of the" USMS, BOP, and detention facility, (*id*. at ¶ 2(b), (d), (e)); (iii) grants the USMS, BOP, and detention facility discretion to determine the quantity and duration of Plaintiff's non-legally privileged telephone calls, with a minimum of one call per month, (*id*. at ¶ 3(a)(ii)); (iv) grants the USMS, BOP, and detention facility discretion to prohibit Plaintiff's non-legal phone calls should it determine that his calls involve inappropriate activity, (*id*. at ¶ 3(e)); (v) permits, but does not require, the USMS, BOP, detention facility, FBI and/or CIA to monitor the Plaintiff's non-legal visits, (*id*. at ¶ 3(f)(iii)(1));  (vi) permits Plaintiff to participate in religious prayer as part of a contact or non-contact visit but only at the discretion of the USMS, BOP, and detention facility, (*id*. at ¶ 5(b)); and (vii) instructs the USMS,  BOP, and detention facility to make determinations about what publications and books Plaintiff can access (*id*. at ¶¶ 8(a)(i), (9)).

Courts routinely hold that decisions about placing an inmate in segregated housing implicates the discretionary function exception. *See Barone v. United States,* No. 12 Civ. 4103 (LAK), 2014 WL 4467780, at *12 (S.D.N.Y. Sept. 10, 2014) ("In general, courts have deemed the federal government immune with respect to claims challenging the decision of whether and when to return an inmate from the [segregated housing unit] to the prison's general population."); *Ojo,* 2019 WL 3852391, at *8 ("The decision to place plaintiff in the [segregated housing unit] for three hours was inherently within the BOP's discretion.  Numerous courts have found decisions regarding prison management, inmate security, and the security of officers are policy considerations.").  That is because "[d]ecisions about which inmates must be separated from other inmates are susceptible to policy analysis, as they 'involve a balancing of a number of public policy

considerations including the inmate safety, the ability of inmates to move about the facility, general concerns for prison security, and the effective use of limited resources.'" *See Winters*, 2013 WL 1627950, at *5 (quoting *Ortiz*, 2002 WL 1492115, at *4); *see also Barone,* 2014 WL 4467780, at *12.

Plaintiff's complaints, which in large part arise out of his confinement in segregated housing, fall squarely within the discretionary function exception to the FTCA. All of his complaints involve judgments by the BOP about how to fulfill its duty to provide suitable quarters and provide for the safekeeping, care, and subsistence of Plaintiff while also complying with the SAMs Directive, which instructs the BOP to impose the SAMs but leaves substantial discretion to the BOP as to how to implement them. To be precise, the BOP exercised the discretion afforded to it within the confines of its broad mandate to provide for the safety of its inmates and the SAMs Directive in making decisions about: (1) plumbing issues in Plaintiff's cell; (2) Plaintiff's phone and email privileges; (3) the temperature in Plaintiff's cell; (4) Plaintiff's recreation privileges; (5) processing Plaintiff's mail; (6) the imposition of restrictions on Plaintiff's commissary purchases; (7) Plaintiff's library access; (8) the lighting in Plaintiff's cell; (9) Plaintiff's television privileges; (10) responding to Plaintiff's grievances in a timely manner; (11) Plaintiff's religious services privileges; and (12) Plaintiff's visiting privileges. These decisions are policy-oriented because they involve considerations of issues related to safety, security, budgets, and personnel. *See Turner v. Safley*, 482 U.S. 78, 84-85 (1987) ("Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government.").

The types of day-to-day decisions about which Plaintiff complains—which relate to the housing, maintenance, and management of inmates—are precisely the types of claims that courts

routinely find barred by the discretionary function exception. *See e.g., Fernandini,* 2019 WL 1033797, at *4-5 (holding discretionary function exception applied where inmate complained of overcrowding in housing unit, plumbing issues, rodent infestations, poorly functioning ventilation systems, and failure to prevent or abate dust, rust, and mold); *Ross v. United States*, No. 13 Civ. 573-A, 2013 WL 5290498, at *4 (N.D. Tex. Sept. 18, 2013) ("FTCA complaints of overcrowding, understaffing, and similar issues pertaining to a prisoner's living quarters are routinely found to be excluded from the FTCA by the discretionary function exception."); *Francis v. United States*, 3:10 Civ. 1474, 2011 WL 3563146, at *6 (D. Conn. Aug. 12, 2011) (decision not to equip cell bunk beds with ladders barred by the discretionary function exception because "deciding what steps should be taken to provide for prisoners' safety involves judgment and discretion"); *Jones v. United States*, No. 09-00976, 2011 WL 2117603, at *5 (W.D. La. May 4, 2011) (prison overcrowding claim barred by the discretionary function exception); *Lineberry v. United States*, No. 3:08 Civ. 0597-G, 2009 WL 763052, at *3 (N.D. Tex. Mar. 23, 2009) (same); *Smith v. Snyder*, No. Civ. A. 05 Civ. 325 (JBC), 2006 WL 379516, at *1, 7 (E.D. Ky. Feb. 15, 2006) (claim that prison failed to prevent "accumulations of bird guano" that caused inmate to develop histoplasmosis barred by the discretionary function exception); *Paulino-Duarte v. United States*, No. 02 Civ. 9499 (RCC), 2003 WL 22533401, at *2 (S.D.N.Y. Nov. 7, 2003) (decision to not put guardrails on prison bunk beds barred by the discretionary function exception).

Because Plaintiff's FTCA claims are based upon the exercise or performance of the BOP's discretionary functions, they are excepted from the FTCA's waiver of sovereign immunity and should be dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's complaints against the Government for lack of subject matter jurisdiction.

Date:  New York, New York
February 3, 2022

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By:      /s/ Tara Schwartz
TARA SCHWARTZ
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2633
Email: tara.schwartz@usdoj.gov