UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSHUA ADAM SCHULTE,

                          Plaintiff,

              -v-                                              21-CV-4042 (JMF)

UNITED STATES OF AMERICA, *et al.*,

                          Defendants.

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINTS

MICHAEL W. MARTIN
IAN WEINSTEIN
Lincoln Sq. Legal Srvs., Inc.
150 W 62nd St, 9th Floor
New York, New York 10023
Tel.: (212) 636-6934
E-mail: mwmartin@lsls.fordham.edu
*Attorneys for Plaintiff*

On the memo:
Katherine Buoymaster
Gabrielle Diaz
Michael T. Hamilton
Isabelle Leipziger
*Legal Interns*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................1

BACKGROUND ...........................................................................................................................3

I.      MR. SCHULTE AND THE PATH OF THIS CASE .......................................................3

II.     THE FOUR WELL-PLED ACTIONS ..........................................................................5

III.    PROCEDURAL HISTORY OF THIS CASE ..................................................................7

LEGAL STANDARD ....................................................................................................................7

ARGUMENT ...............................................................................................................................8

I.      MR. SCHULTE ADEQUATELY PLEADS CLAIMS UNDER THE FTCA ..................8

        A.   Mr. Schulte Alleges Sufficient Causes of Action Under New York State Tort Law ..........9

             1.   Sewage Incident and Other Plumbing Failures ....................................................10

             2.   Exposure to Extreme Temperatures...................................................................10

             3.   Sleep Deprivation.............................................................................................11

             4.   Denial of Recreation .........................................................................................12

        B.   Defendant's Restrictive View of the FTCA and Its Expansive View of Its Defenses
             Are Both Erroneous............................................................................................12

             1.   The Private Analogue Requirement....................................................................12

             2.   Physical Injury .................................................................................................14

             3.   Discretionary Function Exception .....................................................................17

                  a.   The Discretionary Function Exception Does Not Apply Because the
                       BOP's Decisions Were Not Grounded in Public Policy............................17

                  b.   Mr. Schulte's Claims Fall Within the Negligent Guard Theory ...............19

II.     MR. SCHULTE SEEKS LEAVE TO AMEND AND CONSOLIDATE THE
        COMPLAINTS .........................................................................................................22

CONCLUSION...........................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

*Cases*

*Akins v. Glens Falls City Sch. Dist.*,
    53 N.Y.2d 325, 424 N.E.2d 531 (1981) ............................................................ 9

*Bertin v. United States*,
    478 F.3d 489 (2d Cir. 2007) ........................................................................... 8

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
    403 U.S. 388 (1971) .................................................................................... 5

*Bowens v. Fed. Bureau of Prisons*,
    2013 WL 3038439 (S.D.N.Y. June 18, 2013) ..................................................... 15

*Butler v. Suffolk Cnty.*,
    289 F.R.D. 80 (E.D.N.Y. 2013) ...................................................................... 15

*Caronia v. Philip Morris USA, Inc.*,
    715 F.3d 417 (2d Cir. 2013) ........................................................................... 9

*Chen v. United States*,
    2011 WL 2039433 (E.D.N.Y. May 24, 2011) ..................................................... 20

*Coulthurst v. United States*,
    214 F.3d 106 (2d Cir. 2000) ......................................................... 18, 19, 20, 21

*Farley v. United States*,
    2012 WL 713399 (W.D.N.Y. Mar. 5, 2012) ....................................................... 21

*Gilmore v. Bostic*,
    636 F. Supp. 2d 496 (S.D.W. Va. 2009) ...................................................... 16, 17

*Gurley v. Sheahan*,
    2009 WL 2178685 (N.D. Ill. July 21, 2009) ...................................................... 16

*Hooker v. United States*,
    2013 WL 3491089 (S.D.N.Y. July 12, 2013) ...................................................... 9

*Hughes v. Rowe*,
    449 U.S. 5 (1980) ....................................................................................... 8

*Indian Towing Co. v. United States*,
    350 U.S. 61 (1955) ..................................................................................... 13

*Jones v. FCI Beckley Med. Emps.*,
    2014 WL 1333211 (S.D.W. Va. Apr. 1, 2014) ............................................... 14, 15

*Laurent v. Edwin*,
    528 F. Supp. 3d 69 (E.D.N.Y. 2021) ................................................................ 8

*Liranzo v. United States*,
    690 F.3d 78 (2d Cir. 2012) ........................................................................... 13

*Matima v. Celli*,
    228 F.3d 68 (2d Cir. 2000) ........................................................................... 22

*McGowan v. United States*,
    825 F.3d 118 (2d Cir. 2016) .......................................................................... 14

*Michtavi v. United States*,
    2009 WL 578535 (M.D. Pa. Mar. 4, 2009) ....................................................... 15

*Morrison v. United States,*
  2019 WL 5295119 (S.D.N.Y. Oct. 18, 2019) ........................................... 13, 19, 20

*Murray v. Edwards Cnty. Sheriff's Dep't,*
  248 F. App'x 993 (10th Cir. 2007) ...................................................................... 16

*Negron v. United States,*
  2020 WL 5634304 (S.D.N.Y. Sept. 21, 2020) ..................................................... 15

*Nielsen v. Rabin,*
  746 F.3d 58 (2d Cir. 2014) .................................................................................. 22

*Owens v. Haas,*
  601 F.2d 1242 (2d Cir. 1979) .............................................................................. 13

*Perez v. United States,*
  271 F. App'x 240 (3d Cir. 2008) ......................................................................... 15

*Qin Chen v. United States,*
  494 F. App'x 108 (2d Cir. 2012) ...................................................................... 9, 20

*Rhodes v. United States*
  2019 WL 1552986 (S.D. Ill. Apr. 10, 2019) ....................................................... 14

*Rivera v. Fed. Bureau of Prisons,*
  2018 WL 11312146 (S.D.N.Y. Dec. 14, 2018) ...................................................... 9

*Sanchez v. State of New York,*
  99 N.Y.2d 247, 784 N.E.2d 675 (2002) ................................................................ 9

*Scott v. Quay,*
  2020 WL 8611292 (E.D.N.Y. Nov. 16, 2020) .................................... 13, 17, 20, 21

*Smith v. United States,*
  207 F. Supp. 2d 209 (S.D.N.Y. 2002) ........................................................ 9, 10, 11

*Sweet v. Sheahan,*
  235 F.3d 80 (2d Cir. 2000) .................................................................................... 8

*Triestman v. Fed. Bureau of Prisons,*
  470 F.3d 471 (2d Cir. 2006) ...................................................................... 2, 19, 21

*United States v. Gaubert,*
  499 U.S. 315 (1991) ............................................................................................ 19

*United States v. Muniz,*
  374 U.S. 150 (1963) ......................................................................................... 9, 13

*United States v. Olson,*
  546 U.S. 43 (2005) ......................................................................................... 12, 13

*Waters v. Andrews,*
  2000 WL 1611126 (W.D.N.Y. Oct. 16, 2000) .................................................... 16

*Williams v. Goord,*
  111 F. Supp. 2d 280 (S.D.N.Y. 2000) ................................................................ 16

*Young v. United States,*
  2014 WL 1153911 (E.D.N.Y. Mar. 20, 2014) .................................................... 20

**Statutes**

18 U.S.C. § 4042 ..................................................................................................... 9

18 U.S.C. § 4042(a)(2) .................................................................................. 9, 19, 22

28 U.S.C. § 1346(b)(1) ............................................................................................. 8

28 U.S.C. § 1346(b)(2)................................................................................14, 15, 16
28 U.S.C. § 2680(a) .............................................................................................. 17
28 U.S.C. §§ 1346, 2671 ........................................................................................ 1
42 U.S.C. § 1997e(e)................................................................................14, 15, 16
N.Y. Penal Law § 10(9)(10)&(11)........................................................................ 14

**Rules**

Federal Rule of Civil Procedure 12(b)(1)...........................................................1, 7
Federal Rule of Civil Procedure 15(a)(1)............................................................. 22
Federal Rule of Civil Procedure 15(a)(2)....................................................3, 22, 23

**Other Authorities**

Ergün Cakal, *Befogging Reason, Undermining Will:  Understanding Sleep Deprivation as Torture and Other Ill-Treatment in International Law*, 29 Int'l Rehab. Council for Torture Victims 2019...................................................................................................11
*United States v. Days*, 19-CR-619, ECF No. 35....................................................21

Plaintiff Joshua Adam Schulte, through counsel, respectfully submits this memorandum of law in opposition to Defendant United States of America's motion, in this consolidated action, to dismiss his complaints pursuant to Federal Rule of Civil Procedure 12(b)(1).

## PRELIMINARY STATEMENT

Mr. Schulte's *pro se* complaints plead cognizable, sufficient, and substantial claims against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq*. The injuries and squalor he experienced from October 2018 through June 2021 at the now-shuttered Metropolitan Correctional Center ("MCC") were deplorable and actionable.  He was, at the relevant time, subject to Special Administrative Measures ("SAMs") that are, and may in the future be, the subject of other independent litigation.

This case does not challenge or address the legality, scope, or implementation of the SAMs, except to the very limited extent that counterargument may require reference to those measures. Whatever ultimate determination may be made about the legal limits or status of the SAMs, they neither authorize the negligent infliction of compensable injury upon Mr. Schulte nor immunize the United States from liability beyond the general rules applicable to other detainees.

Defendant, in its motion to dismiss for lack of subject matter jurisdiction, seeks to disclaim liability by arguing, contrary to the law, for an impossibly narrow view of the actions available to Mr. Schulte and invoking several inapplicable defenses.  The motion to dismiss all his complaints must be rejected.  Mr. Schulte now concedes that eight of his complaints focus on Bureau of Prisons ("BOP") actions that are deplorable—delay of legal correspondence and arbitrarily restricted access to commissary, law library, administrative remedies, television, religious services, and phone minutes—but unactionable under the FTCA.  There remain four claims, however, that are cognizable in this Court and well pled.  This memorandum of law focuses on

1

those four claims and analyzes why Defendant's motion to dismiss this action for lack of jurisdiction must be rejected.

This case presents the question of whether the negligent infliction of injury by officials with a duty of care to a detainee, who was held under the most restrictive conditions of confinement in a failing facility, is subject to legal scrutiny and may give rise to a damage award.  If those actions are not subject to legal recourse, those officials will remain beyond the reach of the law despite their negligent infliction of injury.   Congress passed the FTCA to hold officials accountable, and Mr. Schulte's *pro se* filings, read liberally as is required, *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (requiring courts to interpret submissions of a *pro se* litigant to raise the strongest arguments that they suggest), are properly before this Court and well pled.

Defendant's efforts to deny these claims rest upon a misreading of the FTCA.  While the FTCA requires a detainee to allege an analogous state tort, it does not impose the onerous burdens Defendant suggests.  Mr. Schulte's pleadings (1) allege facts that sufficiently plead an analogous New York State tort law claim, and (2) meet the physical injury requirement of the FTCA as that requirement is defined in the case law.

 He pleads facts showing the BOP's negligence in leaving him sitting in sewage, preventing him from sleeping and exercising, and subjecting him to living conditions that, as he states, caused "damage to health," 21-CV-4042, ECF No. 1 at 3, and "severe illness," 21-CV-5851, ECF No. 2 at 3.  Those federal officials are subject to the FTCA, even though they could not be held liable in a New York court; the waiver of sovereign immunity is a distinctive role of the FTCA.  Those negligent acts and omissions  cannot be justified as falling within the official discretion of the BOP

2

or its agents.  There is no justification for treating a detained person, who is completely reliant on his guards for every aspect of his well-being, as Mr. Schulte was treated.

In the alternative, Mr. Schulte seeks leave to amend his *pro se* complaints pursuant to Federal Rule of Civil Procedure 15(a)(2).  Amendment would not be futile, as he now—with the assistance of counsel—attaches a draft amended complaint that better highlights the sufficiency of his allegations and alleges additional facts.

## BACKGROUND

**I.    MR. SCHULTE AND THE PATH OF THIS CASE**

Joshua Schulte is thirty-four years old and grew up as the eldest of four sons in Lubbock, Texas.  He received a degree in electrical and computer engineering from the University of Texas at Austin in 2011 and then joined the Central Intelligence Agency.

On August 24, 2017, Mr. Schulte was presented on child pornography charges and granted pretrial release. *See* 17-CR-548, ECF No. 9.  In January 2018, he was remanded to the MCC after a finding that he had violated the conditions of his release. *See* 17-CR-548, ECF No. 22.  Mr. Schulte appealed the revocation of his conditions of release, and the Second Circuit affirmed the lower court's detention order. *See United States v. Schulte*, No. 18-145, ECF No. 34 (2d Cir. Mar. 6, 2018).

On June 18, 2018, the government filed a superseding indictment, adding national security charges allegedly related to the Wikileaks disclosure. *See* 17-CR-548, ECF No. 47.  After the superseding indictment was filed, the government alleged that Mr. Schulte had violated the terms

of a protective order entered in the action and used contraband cellphones to make unauthorized disclosures while detained at the MCC. 21-CV-4042, ECF No. 21 at 2 (hereinafter "Def.'s Mem.")[1]

On or about October 26, 2018, the Attorney General directed the BOP to implement Special Administrative Measures ("SAMs") against Mr. Schulte. *See id.* Pursuant to the SAMs, he was moved to the MCC's 10 South, the facility's most restrictive unit. There were six cells in 10 South. Under the SAMs governing his detention, Mr. Schulte is housed alone in a cell, separate from other inmates. *See* 17-CR-548, ECF No. 92, Ex. F. He is forbidden from contact of any sort with other inmates. *Id.* He was, at that time, allowed no visitors except his attorneys in the criminal case and members of his immediate family.

All visits were and remain non-contact, and the family visits are monitored. *Id.* All visitors must agree not to pass on any information from Mr. Schulte to third parties, and he has no communication, of any sort, with any other people, except for ordinary mail service, *see id.*, which is limited, monitored, and unreliable. Since being transferred from the MCC, counsel appearing in his civil matter have also gained authorization for non-contact visits with restrictions, including prohibition of third-party disclosures.

The MCC is located in downtown Manhattan. It opened in 1975 and closed in the late fall of 2021. Before it was closed, the building experienced frequent and often severe plumbing, electrical, heating, cooling, and ventilation issues. The BOP did not provide heating and cooling for inmates. Electrical failures plagued the institution, impacting all aspects of the detainees' lives; the BOP did not consistently provide hot food, timely and adequate medical care, or maintain the

---

[1] For the purposes of this memorandum, "Def.'s Mem." refers to Defendant's Memorandum of Law in Support of the United States of America's Motion to Dismiss the Complaints, docketed at 21-CV-4042, ECF. No. 21.

most basic standards and services, such as plumbing.  Elevator transport in a multi-story building was unreliable and often failed.

## II.      THE FOUR WELL-PLED ACTIONS

In June and July 2021, after nearly three years of confinement under very restrictive conditions at a failing facility, Mr. Schulte filed a dozen *pro se* complaints arising from his experiences while housed in 10 South.  Denied any other avenue to bring his situation to light, his complaints describe his experiences of being isolated from others and denied sleep and recreation, as well as being subjected to sewage waste and other hazards that caused him injury and gave rise to actions under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the FTCA.

### *Sewage Incident and Other Plumbing Failures*

In his complaint docketed as 21-CV-5851, ECF No. 2, Mr. Schulte describes chronic plumbing problems in the tiny cells in which he was continuously confined between October 2018 and June 2021, including regular water and sewage leaks, lack of water pressure in the sink and shower, lack of hot water, inability to control the temperature of the water, and other plumbing failures. *See id.* at 2–3.  He describes burning his skin when the water was too hot and having no choice but to wash with freezing water at other times. *See id.*  Mr. Schulte also details the events of October 30, 2020, when the toilet in his cell overflowed and he was forced to remain there, with the floor covered with reeking raw sewage, for more than twelve hours. *See id.*  Mr. Schulte describes getting "violently sick from the sewage fumes, including vomiting, diahrea [sic.], etc. that lasted for several days." *Id.*  Mr. Schulte states that he "could not sleep" and told BOP officers multiple times during the night that he was "extremely sick," but the officers refused to move him

despite there being an empty cell in the unit. *Id.*  He gives notice in his complaints that the BOP's

negligence damaged his health and caused severe illness. *See id.*

### Exposure to Extreme Temperatures

In his complaint docketed at 21-CV-6504, ECF No. 2, Mr. Schulte alleges that between

October 2018 and June 2021, the BOP failed to provide heat in the winter, exposing Mr. Schulte

to extreme temperatures and causing water to freeze in his cell. *See id.* at 2–3.  At times, Mr.

Schulte was forced to wear three layers of clothing to try to keep warm. *See id.*  Mr. Schulte also

alleges that the BOP shut off the air conditioning on hot summer days without explanation,

exposing Mr. Schulte to unbearable heat. *See id.*  As a result of being exposed to these extreme

temperatures, Mr. Schulte suffered tremendous pain and suffering. *See id.*

### Sleep Deprivation

In his complaint docketed at 21-CV-5173, ECF No. 1, Mr. Schulte describes how, between

October 2018 and June 2021, the BOP subjected him to constant lighting inside his cell that could

not be turned off. *See id.* at 2–3.  As a result, Mr. Schulte suffered "constant sleep deprivation"

and permanent psychological damage. *See id.*

### Denial of Recreation

In his complaint docketed at 21-CV-4042, ECF No. 1, Mr. Schulte alleges that between

October 2018 and June 2021, the BOP blacked out the windows in Mr. Schulte's cell to prevent

him from looking outside, "prohibit[ed] outside recreation," and "routinely fail[ed] to take plaintiff

to inside recreation." *See id.* at 2–3.  As a result, Mr. Schulte suffered damage to his physical health and permanent psychological damage. *See id.*

Mr. Schulte was transferred out of the MCC in or around October 2021. *See* Def.'s Mem. at 4.  He was moved to the Metropolitan Detention Center ("MDC") in Brooklyn, New York.  He is currently detained under very restrictive conditions in unit K84 at the MDC.

## III.    PROCEDURAL HISTORY OF THIS CASE

On November 10, 2021, the Court dismissed Mr. Schulte's *Bivens* claims for failure to allege any personal involvement of any of the individual defendants and failure to provide identifying information for the Doe defendants. 21-CV-4042, ECF No. 9.  The Court also found that Mr. Schulte's transfer from the MCC to the MDC mooted his requests for injunctive relief. *See* 21-CV-4042, ECF No. 9.  On January 12, 2022, the Court consolidated the twelve separate complaints under this action. *See* 21-CV-4042, ECF No. 18.  The government then moved under Federal Rule of Civil Procedure 12(b)(1) to dismiss the remaining FTCA actions, *see* 21-CV-4042, ECF No. 20, and Mr. Schulte requested counsel be appointed to represent him because he lacked access to the legal materials necessary to respond to the Government's motion to dismiss, *see* 21-CV-4042, ECF No. 36.

The Court requested counsel for this civil matter and current counsel filed a notice of appearance in this case on August 24, 2022, agreeing to represent Mr. Schulte in this matter *pro bono*. *See* 21-CV-4042, ECF No. 39.  Counsel then worked with the government to amend the SAMs to permit counsel in the civil case to visit Mr. Schulte and discuss this matter with him.

## **LEGAL STANDARD**

Defendant moves to dismiss the complaints in this consolidated action pursuant to Federal Rule of Civil Procedure 12(b)(1).  Where a defendant brings a facial challenge to subject matter

jurisdiction, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).

Defendant's motion to dismiss is based on Mr. Schulte's *pro se* filings and his papers must be liberally construed.  In particular, his inartful drafting and failure to understand the particular legal contours of this complicated area of law should not be held against him.  His complaints, read together, plead actions under the FTCA.  As other courts have noted, "[i]n considering a dispositive motion brought or defended by a *pro se* litigant, [a] Court 'must 'liberally construe[ ]' the *pro se* party's pleadings in his favor and hold him to 'less stringent standards than formal pleadings drafted by lawyers.'"  *Laurent v. Edwin*, 528 F. Supp. 3d 69, 83–84 (E.D.N.Y. 2021) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980)); *see also Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) ("[The Second Circuit] liberally construe[s] pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." (internal quotation marks and citations omitted)).

## ARGUMENT

### I.   MR. SCHULTE ADEQUATELY PLEADS CLAIMS UNDER THE FTCA

The FTCA waives the sovereign immunity enjoyed by the United States, and allows a private citizen to sue the United States for injuries caused by "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C.

§ 1346(b)(1).  Because all events at issue here occurred at the MCC, New York law applies. *See Qin Chen v. United States*, 494 F. App'x 108, 109 n.3 (2d Cir. 2012).

### A.   Mr. Schulte Alleges Sufficient Causes of Action Under New York State Tort Law

In this case, Mr. Schulte was required to, and did, plead claims of negligence under New York state law.  Under New York law, in order to recover on a claim for negligence, a plaintiff must show "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 428 (2d Cir. 2013) (quoting *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333, 424 N.E.2d 531, 535 (1981)).

The BOP has a duty to "exercise 'ordinary diligence' or reasonable care 'to keep prisoners safe and free from harm.'" *Hooker v. United States*, No. 11-CV-2840, 2013 WL 3491089, at *6 (S.D.N.Y. July 12, 2013) (citing *Smith v. United States*, 207 F. Supp. 2d 209, 214 (S.D.N.Y. 2002)); *see also Qin Chen*, 494 F. App'x at 109 ("In New York, a correctional facility 'owes a duty of care to safeguard inmates . . . .'" (quoting *Sanchez v. State of New York*, 99 N.Y.2d 247, 252–53, 784 N.E.2d 675, 678 (2002))).

By law, the BOP must "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2); *see also United States v. Muniz*, 374 U.S. 150, 164–65 (1963) (stating that the BOP's duty of care is fixed by 18 U.S.C. § 4042, "independent of [any] inconsistent state rule").  Accordingly, "the first element of a negligence claim—*i.e.*, the existence of a duty of care—would be satisfied by any negligence claim being asserted by [a plaintiff] regarding the care he received while in the custody of the BOP." *Rivera v. Fed. Bureau of Prisons*, No. 17-CV-05103,

2018 WL 11312146, at *11 (S.D.N.Y. Dec. 14, 2018), *report and recommendation adopted*, 368 F. Supp. 3d 741 (S.D.N.Y. 2019).

### 1.   Sewage Incident and Other Plumbing Failures

Mr. Schulte has stated a claim for negligence under New York law by alleging that BOP officials breached their duty of care on October 30, 2020, and caused Mr. Schulte to suffer physical injury. *See* 21-CV-5851, ECF No. 2 at 2–3.  Specifically, BOP officers failed to move Mr. Schulte from a cell continuously flooding with sewage, despite Mr. Schulte telling them multiple times during the night that he was "extremely sick." *Id.* at 3.  As a result of the BOP's breach of duty, Mr. Schulte became "violently sick from the sewage fumes, including vomiting, diahrea [sic.], etc. that lasted for several days." *Id.*

In addition to the specific incident on October 30, the BOP's repeated and negligent failure to maintain a functional plumbing infrastructure caused physical injury to Mr. Schulte, giving rise to a cognizable negligence claim.  *See Smith*, 207 F. Supp. 2d at 214 (recognizing that "a failure [by the BOP] to exercise ordinary care, or reasonable care, to provide suitable quarters is actionable" under the FTCA (citation and internal quotation marks omitted)).  The BOP had an ordinary duty of care to maintain the MCC's plumbing infrastructure, which includes a humane means for detainees to relieve themselves of bodily waste.  However, Mr. Schulte alleges the existence of regular sewer leaks and no flushing capability in addition to the above incident. *See* 21-CV-5851, ECF No. 2 at 2–3.  Thus, the BOP breached its duty of ordinary care to Mr. Schulte by failing to provide a functional plumbing system, resulting in injury to Mr. Schulte in the form of illness following exposure to raw sewage. *See id.*

### 2.   Exposure to Extreme Temperatures

The BOP breached its duty of care to Mr. Schulte when it negligently failed to provide heat in the winter and air conditioning in the hot summer months, resulting in physical injury to Mr.

Schulte. *See* 21-CV-6504, ECF No. 2 at 2–3.  At times, Mr. Schulte was forced to wear three layers of clothing to guard against the near- and below-freezing temperatures. *See id.*  The cold temperatures were sufficiently extreme to cause water inside Mr. Schulte's cell to freeze. *See id.* In the extreme heat of the summer months, and despite the fact that 10 South was equipped with an air conditioning system, BOP officials did not air condition the 10 South cells. *See id.*  The BOP's failure to mitigate these extreme winter and summer temperatures demonstrated a complete disregard for Mr. Schulte's health and safety under their supervision and was a result of the BOP's negligent acts and omissions. *See Smith*, 207 F. Supp. 2d at 216 (stating that the BOP is "required to act with due care to keep its facilities temperate, that is, within a reasonable range").  Because of the BOP's negligent acts and omissions, Mr. Schulte experienced pain and suffering giving rise to physical injury actionable under the FTCA. *See* 21-CV-6504, ECF No. 2 at 3.

### 3.    Sleep Deprivation

The BOP breached its duty of care to Mr. Schulte when it repeatedly and negligently deprived Mr. Schulte of adequate sleep during his detention at 10 South. *See* 21-CV-5173, ECF No. 1 at 2–3.  In repeatedly and negligently depriving Mr. Schulte of this basic, physical need, the BOP's breach gave rise to injury actionable under the FTCA.  Sleep deprivation is, today, well-recognized as a form of, or akin to, torture.[2]  During the period between October 2018 and June 2021, detainees at 10 South were housed in cells containing constant lighting that could not be turned off. *See id.*  By negligently subjecting the detainees to constant lighting, the BOP

---

[2]        *See* Ergün Cakal, *Befogging Reason, Undermining Will:  Understanding Sleep Deprivation as Torture and Other Ill-Treatment in International Law*, 29 Int'l Rehab. Council for Torture Victims 2019, at 11, 14 ("The UN Special Rapporteur on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (UNSRT) has regularly identified that sleep deprivation is indeed capable of amounting to torture.").

caused Mr. Schulte physical injury—in the form of sleep deprivation and its well-recognized impact on long term health —giving rise to an actionable claim under the FTCA.

### 4.   Denial of Recreation

The BOP breached its duty of care to Mr. Schulte when it negligently prohibited him from engaging in any outdoor recreation and routinely denied him indoor recreation. *See* 21-CV-4042, ECF No. 1 at 2–3.  The BOP's failure to provide Mr. Schulte with consistent, basic access to recreation was a result of the BOP's negligent acts and omissions.  These failures harmed Mr. Schulte's physical health and caused permanent psychological damage, giving rise to an actionable claim under the FTCA. *See id.*

### B.   Defendant's Restrictive View of the FTCA and Its Expansive View of Its Defenses Are Both Erroneous

### 1.   The Private Analogue Requirement

The Court should reject Defendant's assertion that there is no private analogue for its conduct because "private persons cannot establish facilities to detain other persons." *See* Def.'s Mem. at 14.  As an initial matter, Defendant inaccurately characterizes Mr. Schulte's FTCA claims as "aris[ing] out of his detention, a government function, and the BOP's failure to follow its own internal regulations on prison grievances." *See id.* at 15.  As alleged in the complaints, however, Mr. Schulte's FTCA claims do *not* stem from his detention or the BOP's failure to follow its internal regulations.  Rather, they arise out of the BOP's breach of the duty of care owed to Mr. Schulte during his incarceration at the MCC *independent* of any governmental function or internal regulations.

In addition to mischaracterizing Mr. Schulte's claims, Defendant's argument ignores settled Supreme Court and Second Circuit precedent, which has uniformly rejected Defendant's narrow construction of the private analogue doctrine. *See United States v. Olson*, 546 U.S. 43, 46

(2005) ("[T]his Court rejected the Government's contention that there was 'no liability for negligent performance of uniquely governmental functions.'" (quoting *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955)); *see also Liranzo v. United States*, 690 F.3d 78, 94 (2d Cir. 2012) ("[T]he fact that immigration detentions are 'uniquely governmental' does not mean they have no private analogue for present purposes.").

The Supreme Court has made clear that the private analogue standard requires only that Mr. Schulte allege that private persons would be liable under "like circumstances"—*not* "the same circumstances." *Indian Towing*, 350 U.S. at 64–65; *see also Liranzo*, 690 F.3d at 94 (holding that courts "are 'require[d] . . . to look further afield' for a private analogue when the government in fact is the only entity that performs the actions complained of" (quoting *Olson*, 546 U.S. at 46)).

Defendant effectively asserts that redress under the FTCA is unavailable to federal prisoners, but this is not the law.  In *United States v. Muniz*, the Supreme Court expressly held that federal prisoners could sue under the FTCA for "personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." 374 U.S. at 150; *see also Liranzo*, 690 F.3d at 95 ("In *Muniz*, the Court endorsed a private analogy to the liability of states and state jailors."); *Owens v. Haas*, 601 F.2d 1242, 1249 (2d Cir. 1979) ("[T]he United States has a duty to care adequately for its prisoners and is liable for its own negligence in that regard . . ." (internal citations omitted)).

The broad claim of immunity is belied by the many prisoner negligence cases that have proceeded under the FTCA. *See, e.g.*, *Scott v. Quay*, No. 19-CV-1075, 2020 WL 8611292, at *10–15 (E.D.N.Y. Nov. 16, 2020) (allowing negligence claim to proceed based on allegations that the BOP breached its duty to safeguard detainees at MDC by carelessly and inadequately maintaining the facility's heating, plumbing, and electrical infrastructure); *Morrison v. United States*, No. 17-

CV-6779, 2019 WL 5295119, at *7 (S.D.N.Y. Oct. 18, 2019) (allowing negligence claim to proceed where plaintiff alleged that BOP negligence resulted in death of individual incarcerated at MCC); *Rhodes v. United States*, No. 19-CV-50, 2019 WL 1552986, at *2 (S.D. Ill. Apr. 10, 2019) (allowing claim to proceed where plaintiff alleged that the BOP was negligent in not providing adequate toilets and urinals for inmates).

The cases cited by Defendant are inapposite on this record. *McGowan v. United States* is distinguishable because it found there was no private analogue for a New York wrongful solitary confinement claim or a negligence claim arising solely out of a violation of internal regulations. 825 F.3d 118, 126–27 (2d Cir. 2016). None of Mr. Schulte's claims are for wrongful confinement or based solely on the BOP's violation of its own regulations. Defendant cites cases holding that the FTCA's waiver of sovereign immunity does not extend to constitutional claims, but Mr. Schulte's claims are premised upon a theory of negligence.

### 2.    Physical Injury

The FTCA provides that "[n]o person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody *without a prior showing of physical injury*." 28 U.S.C. § 1346(b)(2) (emphasis added); *see also* PLRA, 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. . . .").

The FTCA does not define "physical injury," *see Jones v. FCI Beckley Med. Emps.*, No. 11-CV-00530, 2014 WL 1333211, at *8 (S.D.W. Va. Apr. 1, 2014), nor does it use language such as "serious physical injury," *compare* N.Y. Penal Law § 10(9)(10)&(11) (defining "physical injury," "serious physical injury," and "deadly physical injury"), or "permanent physical injury,"

or any other language supporting a requirement beyond *a* physical injury.  Consistent with the plain language of the statute, courts have held that a physical injury must be more than *de minimis*, but need not to be significant, in order to proceed under the FTCA.[3] *See Jones*, 2014 WL 1333211, at *8 (collecting cases).

Defendant argues that Mr. Schulte's FTCA claims should be dismissed because his complaints do not allege physical injury. *See* Def.'s Mem. at 10–11.  Indeed, Defendant cites cases where plaintiffs alleged *no* physical injury. *See, e.g.*, *Negron v. United States*, No. 19-CV-05442, 2020 WL 5634304, at *5 (S.D.N.Y. Sept. 21, 2020) ("Plaintiff does not allege anywhere in his Complaint that he suffered any physical injuries."); *Bowens v. Fed. Bureau of Prisons*, No. 12-CV-5591, 2013 WL 3038439, at *9 (S.D.N.Y. June 18, 2013) ("[T]he petition does not allege physical injury.").  Here, however, Mr. Schulte alleges physical injury sufficient to satisfy the statutory requirement and to meet his pleading burden.  At this stage of the case, the Court must take Mr. Schulte's allegations as true and cannot conclude that the physical injuries he alleges are *de minimis* as a matter of law.

With respect to the October 2020 sewage incident, Mr. Schulte alleges that he suffered several days of extreme physical illness, including severe vomiting and diarrhea. *See* 21-CV-5851, ECF No. 2 at 3.  Other courts have found that plaintiffs with injuries similar to those alleged by Mr. Schulte have alleged an adequate physical injury. *See, e.g.*, *Butler v. Suffolk Cnty.*, 289 F.R.D. 80, 93 (E.D.N.Y. 2013) (concluding that plaintiffs' allegations of "intestinal illnesses, skin conditions, respiratory infections, fungal infections, nose bleeds, headaches, blurred vision, and

---

[3]     Given the similarities between 28 U.S.C. § 1346(b)(2) and 42 U.S.C. § 1997e(e), courts often look to case law interpreting both statutes. *See Michtavi v. United States*, No. 07-CV-0628, 2009 WL 578535, at *5 n.2 (M.D. Pa. Mar. 4, 2009) (citing *Perez v. United States*, 271 F. App'x 240, 242 (3d Cir. 2008)), *aff'd*, 345 F. App'x 727 (3d Cir. 2009).

dizziness" from unsanitary conditions at correctional facility "clearly constitute[d]" physical injury); *Gilmore v. Bostic*, 636 F. Supp. 2d 496, 514 (S.D.W. Va. 2009) (finding that "stomach and lower intestinal problems, headaches, cold sweats, rashes, nightmares, vomiting, and teeth grinding" satisfied physical injury requirement); *Waters v. Andrews*, No. 97-CV-407, 2000 WL 1611126, at *8 (W.D.N.Y. Oct. 16, 2000) ("A reasonable jury could find that the term 'physical injury' as used in § 1997e(e) includes exposure to noxious odors, including body odors from human discharges, and 'dreadful' conditions of confinement, without undermining Congress' intent in enacting § 1997e(e).").

Mr. Schulte's allegations that he suffered tremendous pain and suffering from exposure to extreme temperatures, *see* 21-CV-6504, ECF No. 2 at 2–3, sleep deprivation from constant cell illumination, *see* 21-CV-5173, ECF No. 1 at 2–3, and damage to health from deprivation of exercise, *see* 21-CV-4042, ECF No. 1 at 2–3, are likewise all sufficient to satisfy § 1346(b)(2)'s physical injury requirement. *See, e.g.*, *Murray v. Edwards Cnty. Sheriff's Dep't*, 248 F. App'x 993, 996–97 (10th Cir. 2007) (assuming, without deciding, that plaintiff's "headaches and tooth pain are 'physical injuries' sufficient to permit him to recover damages for mental or emotional injury under § 1997e(e) on his claims related to cell illumination and denial of dental care"); *Gurley v. Sheahan*, No. 06CV-3454, 2009 WL 2178685, at *7 (N.D. Ill. July 21, 2009) ("[T]he court can think of no reason why sleep deprivation and headaches would not constitute physical injury."); *Williams v. Goord*, 111 F. Supp. 2d 280, 291 n.4 (S.D.N.Y. 2000) (concluding that "[d]eprivation of exercise for an extended period of time" may constitute physical injury because "exercise, by its very nature, is 'physical'").

In short, Mr. Schulte alleges that he suffered damage to his health, severe illness, vomiting, pain, and sleep deprivation for an extended period of time.  Each of these facts from this *pro se*

litigant meet the physical injury requirement.  Moreover, at this stage in the litigation, the parties have not yet conducted discovery, the Court does not know the full extent of Mr. Schulte's injuries, and the Court must draw all reasonable inferences from the Mr. Schulte's factual allegations in his favor.  *See Gilmore*, 636 F. Supp. 2d at 515.  Accordingly, Mr. Schulte's FTCA claims should proceed.

### 3. Discretionary Function Exception

The FTCA provides an exception to the waiver of sovereign immunity whereby "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused" is not actionable. 28 U.S.C. § 2680(a).

As shown below, the conduct at issue does not fall within the discretionary function exception.  Independently, the negligent guard theory—a theory of liability that functions as a carve-out to the discretionary function exception—is applicable and provides a separate basis for denying Defendant's claim of sovereign immunity.  Defendant's motion to dismiss Mr. Schulte's *pro se* consolidated complaints on jurisdictional grounds is, at best, premature.  Further factual development is necessary before this Court can decide whether the FTCA's waiver of sovereign liability applies to the facts alleged in Mr. Schulte's complaints.

### a. The Discretionary Function Exception Does Not Apply Because the BOP's Decisions Were Not Grounded in Public Policy

The FTCA provides an exception to the FTCA's waiver of sovereign immunity in order to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Scott*, 2020 WL 8611292,

at *13 (citation and internal quotation marks omitted).  This is the discretionary function exception, which does not apply here because the decisions of the BOP officials were not grounded in public policy.  Under the *Berkovitz-Gaubert* test, the discretionary function exception applies only when the following two conditions are met:  "(1) the acts alleged to be negligent must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in 'considerations of public policy' or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (finding that complaint may survive a Rule 12(b)(1) motion to dismiss if facts alleged fall outside discretionary function exception).  Here, the second prong of the *Berkovitz-Gaubert* test is not met.

Mr. Schulte has alleged negligence claims based on decisions made by the BOP that not only caused injury, but also were not grounded in questions of public policy.  Thus, his complaints fall outside the discretionary function exception and should survive Defendant's motion to dismiss and proceed to discovery.  On October 30, 2020, Mr. Schulte's toilet overflowed with sewage water. *See* 21-CV-5851, ECF No. 2 at 3.  BOP officials ignored Mr. Schulte's situation and refused to move him from the cell. *See id.*  Despite there being an unoccupied cell in the same unit, Mr. Schulte was left in the flooded cell overnight. *See id.*  As a result, Mr. Schulte suffered several days of physical illness, including vomiting and diarrhea. *See id.*

This conduct is not, on its face, susceptible to policy analysis and there cannot be any public policy rationale for keeping Mr. Schulte overnight in a cell flooded with sewage waste.  Similarly, the BOP's decisions to refuse to provide Mr. Schulte with heat during the winter, to allow unnecessarily extreme temperatures and humidity in the summer, to expose Mr. Schulte to constant

lighting, and to deny Mr. Schulte access to any form of recreation, cannot be grounded in public policy.

While the BOP has discretion to execute its responsibility to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses," 18 U.S.C. § 4042(a)(2), this discretion does not extend to "discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because [the] acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish." *Coulthurst*, 214 F.3d at 110 (quoting *United States v. Gaubert*, 499 U.S. 315, 325 n.7 (1991)); *see also Morrison*, 2019 WL 5295119, at *7 (concluding that discretionary function exception did not apply and case should proceed to discovery where facts alleged were "unrelated to any plausible policy objectives"). In sum, Defendant fails to show that the conduct alleged in Mr. Schulte's complaints falls within the discretionary function exception, and it is hard to understand what discretion is involved, or what policy is furthered, by forcing a person to sit in a sewage filled cell overnight.

        **b.**      **Mr. Schulte's Claims Fall Within the Negligent Guard Theory**

In the context of prison management, this Circuit considers the negligent guard theory as a "carve-out" to the discretionary function exception. *See Triestman*, 470 F.3d at 476 (recognizing negligent guard theory as a theory of liability under the FTCA); *Morrison*, 2019 WL 5295119, at *6. Where a plaintiff proceeds *pro se*—as Mr. Schulte did—the Second Circuit has applied the negligent guard theory to complaints "susceptible to various readings." *Triestman*, 470 F.3d at 475.

The negligent guard theory applies when "an official's 'lazy or careless failure to perform his or her discretionary duties' are negligent acts that 'neither involve an element of judgment or choice within the meaning of *Gaubert* nor are grounded in considerations of governmental

policy.'" *Chen v. United States*, No. 09-CV-2306, 2011 WL 2039433, at *6 (E.D.N.Y. May 24,

2011) (quoting *Coulthurst*, 214 F.3d at 109–10), *aff'd sub nom. Qin Chen v. United States*, 494 F.

App'x 108 (2d Cir. 2012).  Where a plaintiff can demonstrate that the officials' actions were the

result of "laziness, carelessness, or inattentiveness, rather than grounded in policy considerations,"

the plaintiff can "overcome the FTCA's discretionary function exception." *Young v. United States*,

No. 12-CV-2342, 2014 WL 1153911, at *15 (E.D.N.Y. Mar. 20, 2014).

Accepting Mr. Schulte's allegations as true and drawing inferences in his favor, the BOP's

decision to leave Mr. Schulte in his cell flooded with sewage water can only be explained by

carelessness or inattentiveness.  Mr. Schulte informed multiple BOP officials that his toilet had

overflowed and that he was sitting in sewage water, but he was not moved until the following

morning. *See* 21-CV-5851, ECF No. 2 at 3.  There is no public policy reason to keep a detainee in

sewage waste when there is a nearby unoccupied cell in the same unit.  Thus, Mr. Schulte's claims

fall within the negligent guard theory and are not barred by sovereign immunity. *See Coulthurst*,

214 F.3d at 109–10 (suit not barred by discretionary function exception as complaint's allegations

could be read to refer to negligence in failure of the inspector to perform a diligent inspection out

of laziness or in being carelessly inattentive); *Morrison*, 2019 WL 5295119, at *6–7 (finding

discretionary function exception inapplicable where allegations in complaint could be read to refer

to negligence of the officer on duty by failing to patrol or respond diligently).

Further, Mr. Schulte's complaints also allege regular sewage leaks and dysfunctional

plumbing. *See* 21-CV-5851, ECF No. 2 at 2–3.  These allegations are indicative of a larger

infrastructure problem at the now-shuttered MCC.  In *Scott v. Quay*, the court found that "careless

inattention" to structural failures was sufficient to overcome a motion to dismiss the plaintiff's

FTCA claim. 2020 WL 8611292, at *14–15 (refusing to dismiss FTCA claim and alluding to

negligent guard theory).  There, the court concluded that the allegations in the complaint could support a finding that the power outage at the MDC was "the result of careless inattention to the deteriorating infrastructure at the MDC and that the harsh conditions that ensued when power was lost were not properly addressed out of lack of concern and laziness." *Id.* at *15.

Similarly, Mr. Schulte experienced regular exposure to sewage due to the failing plumbing systems of the MCC. *See* 21-CV-5851, ECF No. 2 at 2–3.  The harms that ensued from this exposure were not properly addressed and there is no valid public policy reason to explain the BOP's inattention.  Indeed, the Honorable Colleen McMahon, United States District Judge for the Southern District of New York, described the conditions at the MCC during the period in question as "disgusting" and "inhuman as anything I've heard about [in] any Colombian prison, but more so because we're supposed to be better than that." *See United States v. Days*, 19-CR-619, ECF No. 35 at 19. ("The single thing in the five years that I was chief judge of this court that made me the craziest was my complete and utter inability to do anything meaningful about the conditions at the MCC . . . .").

The negligent guard theory is a theory of liability under the FTCA over which this Court "clearly has subject matter jurisdiction." *Triestman*, 470 F.3d at 476.  Thus, where a plaintiff has alleged facts that fall within the negligent guard theory, and the record is insufficient to determine whether the factual circumstances ultimately support this theory of liability, courts have permitted the case to proceed to discovery. *See id.* at 475–76 (reading *pro se* complaint to allege negligent guard theory where plaintiff's brief stated that injuries could have been prevented had defendant adhered to its own regulations and neglected its duty of care); *Coulthurst*, 214 F.3d at 109–10 (interpreting *pro se* complaint to assert negligence on basis of inspection policy and employee's failure to perform diligent inspection out of laziness or careless inattention); *Farley v. United*

*States*, No. 11-CV-198, 2012 WL 713399, at \*6–7 (W.D.N.Y. Mar. 5, 2012) (denying dismissal of plaintiffs' FTCA claims where plaintiffs' allegations were broad enough to include negligent guard theory).

## II.   MR. SCHULTE SEEKS LEAVE TO AMEND AND CONSOLIDATE THE COMPLAINTS

In the alternative to denying Defendant's motion to dismiss, Mr. Schulte seeks leave pursuant to Federal Rule of Civil Procedure 15(a)(2) to amend and consolidate his complaints to reflect a more organized and cohesive pleading.  As the Second Circuit has stated, "leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000)).  Mr. Schulte wrote the complaints in this action as a *pro se* plaintiff under severe communication restrictions and with very limited access to legal materials, which made amendment of his pleadings in the 21-day matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1) impossible.  Mr. Schulte has not otherwise amended his pleadings.  In the interests of justice, Mr. Schulte, now represented by counsel, should be permitted to amend his complaints.

Amendment would not be futile.  The Draft Amended Complaint, attached as Exhibit A, more clearly pleads physical injury as to all four causes of action—the sewage incident and dysfunctional plumbing, sleep deprivation, exposure to extreme temperatures, and denial of exercise—argued in this Opposition and, given a proper understanding of Defendant's statements, presents Mr. Schulte's suit in a fashion that addresses the arguments in the motion to dismiss.

The Draft Amended Complaint also pleads an additional two causes of action—negligent exposure to dangerous air quality and negligent pattern and practice of failure to provide

adequate sanitation, breathable air, and other rudiments—related to Mr. Schulte's confinement at

the MCC and the instant complaints.  Counsel has clarified the facts surrounding both the

existing and new causes of action through conversations with Mr. Schulte, and this Court

recognized that the scope of counsel's representation "encompasses the filing of any Amended

Complaint." 21-CV-4042, ECF No. 43.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss should be denied.  Alternatively,

this Court should permit Mr. Schulte to amend and consolidate his complaints pursuant to Federal

Rule of Civil Procedure 15(a)(2).


Date:   New York, New York
          November 18, 2022


                                        Respectfully submitted,

                                        MICHAEL W. MARTIN
                                        IAN WEINSTEIN
                                        Attorneys for Plaintiff

                              By:   */s/ Michael W. Martin*
On the memo:                        MICHAEL W. MARTIN
Katherine Buoymaster               Lincoln Sq. Legal Srvs., Inc.
Gabrielle Diaz                     150 W 62nd St, 9th Floor
Michael T. Hamilton                New York, New York 10023
Isabelle Leipziger                 Tel.: (212) 636-6934
*Legal Interns*                     E-mail: mwmartin@lsls.fordham.edu


23