**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSHUA ADAM SCHULTE, | |
| Plaintiff, | |
| -v- | 21 Civ. 4042 (JMF) |
| UNITED STATES OF AMERICA, *et al.*, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE UNITED**
**STATES OF AMERICA'S MOTION TO DISMISS THE COMPLAINTS**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2633
E-mail: tara.schwartz@usdoj.gov

TARA SCHWARTZ
Assistant United States Attorneys
– Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................ 3

    I.      Plaintiff Failed to Plead a "Physical Injury" for Three of His Remaining Complaints 3

    II.     Plaintiff's Claims Lack a Private Analogue................................................................ 4

    III.    Plaintiff's Claims Are Barred by the Discretionary Function Exception .................... 6

CONCLUSION..................................................................................................................... 9

Defendant United States of America (the "Government"), by its attorney Damian Williams, United States Attorney for the Southern District of New York, respectfully submits this reply memorandum of law in further support of its motion to dismiss Plaintiff Joshua Adam Schulte's consolidated complaints pursuant to Federal Rule of Civil Procedure 12(b)(1).

## PRELIMINARY STATEMENT

The Government's opening brief explained why Plaintiff's twelve complaints arising out different aspects of his conditions of confinement at the MCC do not properly invoke the FTCA, which is the only potential waiver of sovereign immunity for Plaintiff's claims against the Government.  As explained in that brief, Plaintiff's FTCA claims must be dismissed because: (1) they do not involve a physical injury; (2) he alleges only constitutional claims which are not cognizable under the FTCA; and (3) his claims fall within the discretionary function exception to the FTCA.  (*See* ECF No. 21, Memorandum of Law in Support of the United States of America's Motion to Dismiss the Complaints (the "Opening Brief")).

In his opposition to the Government's motion to dismiss, Plaintiff concedes that eight of his twelve complaints are not actionable pursuant to the FTCA.  (*See* ECF No. 46, Memorandum of  Law in Opposition to Defendant's Motion to Dismiss the Complaints (the "Opposition Brief" or "Opp. Br.")).  However, he asserts that four of his complaints are cognizable: (1) the complaint in which he alleges that his cell had chronic plumbing issues (No. 21 Civ. 5851, ECF No. 2 (the "Plumbing Complaint")); (2) the complaint in which he alleges he was exposed to extreme temperatures (No. 21 Civ. 6504, ECF No. 2 (the "Temperature Complaint")); (3) the complaint in which he alleges that an inability to control the lighting in his cell (No. 21 Civ. 5173, ECF No. 1 (the "Lighting Complaint")); and (4) the complaint in which he asserts he has been prohibited from engaging in recreation (No. 21 Civ. 4042, ECF No. 1 (the "Recreation Complaint")).

1

In the Plumbing Complaint, Plaintiff complains that his sink lacks hot water, he does not have the ability to mix hot and cold water in his shower, there is no water pressure in the sink or showers, he does not have the capability to flush the toilet, and there are constant sewer leaks. *Id*. at 2. He claims that inmates in the general population at the MCC had normal sinks, toilets and showers: specifically, that they had sinks and showers with dials that allowed a mixture of hot and cold water, normal water pressure, and real toilets with toilet seats and flushing power. *Id*. The Plumbing Complaint notes that on occasions of dysfunctional plumbing, Plaintiff is typically moved from his cell to another cell within hours. *Id*. at 3. However, he asserts that on one occasion, on October 3, 2020, he was not moved from his cell after his toilet flooded and was left to sleep in his cell overnight which caused him to become sick with vomiting and diarrhea. *Id*.

In the Temperature Complaint, Plaintiff alleges that the MCC refused to provide him with heat in the winter and intentionally exposed him to extreme temperatures. *Id*. at 2. He also claims that the Government shut off the air conditioning on certain days in the summer to expose him to extreme heat. *Id*. He asserts that "every other MCC inmate had heat in the winter and AC in the summer." *Id*. As a result, he claims injuries in the form of "pain and suffering." *Id*. at 3.

In the Lighting Complaint, Plaintiff alleges that the Government intentionally subjected him to torture by sleep deprivation by keeping the lights on his in cell and refusing to provide him with a light switch that could turn off the lights. *Id*. at 2. He asserts that "every other MCC inmate could toggle the lights in their cells, and did not have lights that could not be turned off at all in their cell." *Id*. Plaintiff claims that as a result he "experienced permanent psychological damage from constant sleep deprivation and torture." *Id*. at 3.

Finally, in the Recreation Complaint, Plaintiff complains that the Government tortured him by prohibiting outside recreation, blacking out the windows in his cell to prevent him from looking

2

outside, and routinely failing to take him for indoor recreation. *Id*. at 2. Again, he asserts that all other MCC pretrial detainees are provided regular outside recreation and can look outside unobstructed windows. *Id*. Plaintiff claims that he suffered "permanent psychological damage and damage to health" as a result of the Government's failure to provide him with recreation. *Id*. at 3.

## ARGUMENT

### I.   Plaintiff Failed to Plead a "Physical Injury" for Three of His Remaining Complaints

As outlined in the Government's Opening Brief, both the FTCA and the PLRA require that Plaintiff plead a physical injury to bring his FTCA claims against the Government. (*See* Opening Br. at 9). The Second Circuit recently held, "[a] prisoner's claim seeking damages for mental or emotional injury resulting from prison conditions, without a showing of physical injury, does not comply with 1997e(e), and is thus subject to dismissal for failure to state a claim." *Walker v. Schult*, 45 F.4th 598, 615 (2d Cir. 2022) (internal citations omitted) (citing *Davis v. District of Columbia*, 158 F.3d 1342, 1348-1349 (D.C. Cir. 1998) (affirming a *sua sponte* dismissal for failure to state a claim where complaint for mental or emotional injury did not allege physical injury as required by § 1997e(e))).

The Government concedes that Plaintiff has satisfied the physical injury requirement for the Plumbing Complaint, as he has alleged, in that complaint, that he became sick with vomiting and diarrhea. (*See* Plumbing Complaint at 3). However, Plaintiff has failed to satisfy the physical injury requirement with respect to his remaining claims, for which he alleges only unspecified pain and suffering and psychological damage. These types of generalized or emotional damages do not meet the PLRA or FTCA's physical injury requirement. For example, in *Caraballo v. Dep't of Corr. City of New York*, No. 22 Civ. 971 (JLR), 2022 WL 16555313, at *5 (S.D.N.Y. Oct. 31,

2022), the court held that the *pro se* plaintiff's allegations of "health conditions, mental health & pain and suffering, human rights neglection" did not suffice to meet the physical injury requirement of the PLRA.  *See also Dash v. Mayers*, No. 19 Civ. 414 (GBD) (JLC), 2020 WL 1946303, at *6 (S.D.N.Y. Apr. 23, 2020) (dismissing complaint pursuant to physical injury requirement of PLRA where plaintiff alleged "pain and suffering, medical bills and emotional distress"), *report and recommendation adopted sub nom. Dash v. Doe*, 2020 WL 3057133 (S.D.N.Y. June 9, 2020); *Leneau v. Ponte*, No. 16 Civ. 776 (GHW), 2018 WL 566456, at *17 (S.D.N.Y. Jan. 25, 2018) (concluding that "emotional stress, mental anguish, stress, paranoia, fear of working around Hispanic people, intimidations, insomnia, and chronic migraines" do not constitute physical injury under the PLRA); *Smith v. City of New York*, No. 14 Civ. 443 (LTS) (KNF), 2015 WL 1433321, at *9 (S.D.N.Y. Mar. 30, 2015) (concluding that the plaintiff's alleged "stress, depression, and sleep deprived nights" were not physical injuries under the PLRA); *Abreu v. Nicholls*, No. 04 Civ. 7778 (DAB) (GWG), 2011 WL 1044373, at *3 (S.D.N.Y. Mar. 22, 2011) (finding that chronic headaches and an inability to sleep "do not constitute a 'physical injury' within the meaning of the PLRA"), *report and recommendation adopted*, 2012 WL 1079985 (S.D.N.Y. Mar. 30, 2012); *see also Figueroa v. Trump*, No. 9:20 Civ. 0401 (TJM) (CFH), 2020 WL 5640397, at *3 (N.D.N.Y. Sept. 22, 2020) ("the FTCA is not a vehicle for awarding damages for pain and suffering or mental or emotional distress").  Since Plaintiff fails to allege any physical injury as the result of the Temperature, Lighting, and Recreation Complaints, those complaints are subject to dismissal.

## II.   Plaintiff's Claims Lack a Private Analogue

In its Opening Brief, the Government explained why Plaintiff's claims, regarding alleged constitutional violations concerning his confinement, were subject to dismisal under the FTCA

4

because no such private analogue exists under state tort law.  (*See* Opening Br. at 11-15).  In his Opposition Brief, Plaintiff now claims his complaints are premised on a theory of negligence.  (*See* Opp. Br. at 14 ("Defendant cites cases holding the FTCA's waiver of sovereign immunity does not extend to constitutional claims, but Mr. Schulte's claims are premised upon a theory of negligence.")).  But this argument is inconsistent with Plaintiff's allegations which assert intentional, as opposed to negligent, conduct.  In each of the four complaints, Plaintiff asserts that the Government took action to *punish* and *torture* him and deliberately provided him with conditions of confinement that were worse than those provided to all other inmates at the MCC. *See* Recreation Complaint at 2 ("all other MCC pretrial detainees are provided regular outside recreation and can look outside unobstructed windows"); Temperature Complaint at 2 ("every other MCC inmate had heat in the winter and AC in the summer"); Lighting Complaint at 2 ("During this time period every other MCC inmate could toggle the lights in their cells, and did ot have lights that could not be turned off at all in their cell.") Plumbing Complaint at 2 ("General population have normal sinks, toilets, and showers . . . ").  Given these allegations, Plaintiff's complaints can be construed only to allege intentional conduct on the part of the Government.

Given his own pleading, Plaintiff cannot now assert his FTCA claims are premised on a theory of neglignece, as opposed to intentional claims.  Though litigants may allege alternate, or inconsistent, claims in a pleading, *see* Fed. R. Civ. P. 8(d), when the conduct alleged, if true, may only give rise to liability for an intentional act, a claim of negligence may be dismissed.  *See Chau v. Donovan,* 357 F. Supp. 3d 276, 290 (S.D.N.Y. 2019) ("[B]ecause the actions alleged here were intentional and deliberate allegedly in their nature offensive, they are outside the ambit of actionable negligence.") *Wahlstrom v. Metro–North Commuter R.R. Co.*, 89 F. Supp. 2d 506, 531–32 (S.D.N.Y. 2000) (same); *Ortiz v. City of New York*, No. 15 Civ. 2206 (DLC), 2016 WL

7009059, at *3 (S.D.N.Y. Nov. 30, 2016) ("A claim of harm predicated solely on intentional conduct may not give rise to a claim for negligence." (citing *United Nat. Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir. 1993)); *Schmidt v. Bishop*, 779 F. Supp. 321, 324–25 (S.D.N.Y. 1991) ("New York courts have rejected uniformly such attempts to transmogrify intentional torts into 'negligence.'"); *Trott v. Merit Dep't Store*, 484 N.Y.S.2d 827, 829 (1st Dep't 1985) ("From the facts alleged by plaintiff in his complaint, it is clear that no negligence claim can be justified upon these facts, and the sole viable cause of action (as between the first two causes of action) is for assault."); *Lozada v. Weilminster*, 92 F. Supp. 3d 76, 107 (E.D.N.Y. 2015) ("While Plaintiff is generally permitted to plead different causes of action in the alternative, other District Courts in this Circuit have held that when a plaintiff's factual allegations are 'only consistent with a theory of intentional, or perhaps reckless, conduct,' negligence claims must be dismissed.").  Under New York law, harm predicated on an intentional act may not give rise to a claim of negligence.  *United Nat'l Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir. 1993); *Babikian v. Nikki Midtown*, LLC, 875 N.Y .S.2d 20, 21 (1st Dep't 2009) (dismissing causes of action for "negligent assault" and "negligent battery" as not being recognized causes of action under New York Law); *see also* Dan B. Dobbs *et al.*, Dobbs Law of Torts § 31 (2d ed. 2018) ("Any given act may be intentional or it may be negligent, but it cannot be both.").  Accordingly, Plaintiff's attempts to transmogrify his constitutional and intentional conduct into negligence torts does not save his FTCA claims.

## III.    Plaintiff's Claims Are Barred by the Discretionary Function Exception

The Government's Opening Brief explained that Plaintiff's challenged actions fall within the discretionary function exception to the FTCA because the challenged actions are both: (i) discretionary and (ii) susceptible to policy analysis.  (*See* Opening Br. at 15-20).  In his Opposition Brief, Plaintiff argues that the discretionary function exception does not apply because the

Government's decisions were not grounded in public policy.  (*See* Opp. Br. at 17-19).  Specifically, Plaintiff claims that the Government's decision to leave him overnight in a cell that had flooded with sewage, its decision to refuse to provide him with heat during the winter, its decision to expose Plaintiff to constant lighting, and to deny him any form of recreation cannot be grounded in public policy.  (*See id*. at 18-19).  Plaintiff's argument rests on the assumption that the Government cannot make decisions with which he disagrees.  In housing Plaintiff, the BOP is charged with discretion to provide for his safekeeping, care, subsistence *and* complying with his SAMs.  Accordingly, while at the MCC, Plaintiff was housed in the 10 South unit—the segregated housing unit at the MCC—which is different from the general population units by design.

 Plaintiff's claims fit squarely within the rubric of prison management decisions that courts routinely find are barred by the discretionary function exception.  *See, e.g., Fernandini v. United States*, No. 15 Civ. 3843 (GHW), 2019 WL 1033797, at \*4 (S.D.N.Y. Mar. 5, 2019) (finding BOP's decisions regarding plumbing and rodent management to be barred by discretionary function exception); *Ross v. United States*, No. 13 Civ. 573-A, 2013 WL 5290498, at \*4 (N.D. Tex. Sept. 18, 2013) ("FTCA complaints of . . . issues pertaining to a prisoner's living quarters are routinely found to be excluded from the FTCA by the [DFE]."); see, e.g., Francis v. United States, 3:10 Civ. 1474, 2011 WL 3563146, at \*6 (D. Conn. Aug. 12, 2011) (decision not to equip cell bunk beds with ladders barred by the DFE because "deciding what steps should be taken to provide for prisoners' safety involves judgment and discretion").  Because BOP officials have discretion to make the relevant prison management decisions, those decisions are presumptively policy-oriented.  *Botman v. United States*, 111 F. Supp. 2d 418, 425 (S.D.N.Y. 2000) ("[W]here the relevant federal statute, regulation, or agency guideline[] permits for the exercise of discretion by a government official or employee then there is a presumption that the exercise of that discretion

implicates policy judgments."). That presumption is warranted here becaues the BOP's choices about how to handle plumbing, temperature control, lighting, and recreation for this unit and for inmates, like Plaintiff, who are required to be subject to restrictive conditions of confinement, are decisions which are necessarily susceptible to policy analysis. Each of those decisions requires consideration of issues related to the deployment of BOP maintenance staff, the prioritization of capital issues, the hiring of contractors to address maintenance issues, and how much control to give to inmates versus retain for MCC staff. These are all "practical considerations" relating to "staffing and funding" that constitute policy-based judgments. *United States v. Varig Airlines*, 467 U.S. 797, 820 (1984). In other words, decisions on how to utilize the limited resources allocated to maintain a BOP facility is exactly the kind of discretionary decision, grounded in public policy considerations, that are protected from second guessing through an FTCA claim. As such, these actions fall within the umbrella of the discretionary function exception.

Plaintiff also asserts that, even if the discretionary function exception applied to his claims, that the negligent guard theory operates as a carve-out to save the claims contained in the Plumbing Complaint regarding dysfunctional plumbing. (*See* Opp. Br. at 19-22). He argues that the BOP's decision to leave him overnight in his cell flooded with sewage can be explained only by carelessness or inattentiveness because there is no public policy reason to keep a detainee in a flooded cell when there is a nearby unoccupied cell in the same unit. But Plaintiff has not alleged that a prison employee's carelessness or laziness in carrying out his discretionary duties was the cause of his injuries. *See, e.g., Searles v. United States*, No. 21 Civ. 6570 (RA), 2022 WL 2829912, at *5 (S.D.N.Y. July 20, 2022) (finding negligent guard theory inapplicable where plaintiff failed to allege carelessness or laziness of employee); *Banks v. United States*, No. 10 Civ. 6613 (GBD) (GWG), 2011 WL 4100454, at *15 (S.D.N.Y. Sept. 15, 2011) (same), *report and recommendation*

8

*adopted*, 2011 WL 5454550 (S.D.N.Y. Nov. 9, 2011).  To the contrary, the Plumbing Complaint asserts that, on other occasions when Plaintiff's cell flooded with sewage, he was promptly moved from his cell to another cell in the unit, but that on this specific occasion, the Lieutenant refused to move him.  (*See* Plumbing Complaint at 3).  Accordingly, Plaintiff's complaint indicates not that the Lieutenant was inattentive or lazy, but that the Lieutenant made a calculated decision that Plaintiff could not be moved from his cell on this occasion.  Thus, Plaintiff has not satisfied the requirements of the negligent guard theory and his claims are barred by the discretionary function exception.  *See Chen v. United States*, No. 09 Civ. 2306 (ARR), 2011 WL 2039433, at *10 (E.D.N.Y. May 24, 2011) (where counselor exercised judgment in escorting inmate out of the unit, his decision, even if negligent, was shielded by the discretionary function exception), *aff'd*, 494 F. App'x 108 (2d Cir. 2012).

## CONCLUSION

For the reasons set out here and in the Government's Opening Brief, the Government respectfully requests that the Court grant its motion to dismiss Plaintiff's complaints for lack of subject matter jurisdiction.

Date:   December 9, 2022
        New York, New York

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By:    */s/ Tara Schwartz*
       TARA SCHWARTZ
       Assistant United States Attorney
       86 Chambers Street, 3rd Floor
       New York, New York 10007
       Telephone: (212) 637-2633
       Email: tara.schwartz@usdoj.gov
