UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSHUA ADAM SCHULTE<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 21-CV-4042 (JMF) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

MICHAEL W. MARTIN
IAN WEINSTEIN
Lincoln Sq. Legal Srvs., Inc.
150 W. 62nd St., 9th Floor
New York, NY 10023
(212) 636-6934
mwmartin@lsls.fordham.edu
*Attorneys for Mr. Joshua Adam Schulte*

*On the Memo:*
Macie Lavender
Basha Goldwater
Pierina Hernandez Luperdi
Sheena Qiao
*Legal Interns*

**TABLE OF CONTENTS**

**ARGUMENT** ............................................................................................................................. **1**

I.     THE DISCRETIONARY FUNCTION EXCEPTION DOES NOT PROTECT THE BOP FROM ITS NEGLIGENCE IN THIS CASE. ......................................................... 1

II.    MR. SCHULTE SHOULD BE AWARDED SUMMARY JUDGMENT BECAUSE THE BOP NEGLIGENTLY EXPOSED HIM TO SEWAGE. .................................... 3

III.   MR. SCHULTE SHOULD BE AWARDED SUMMARY JUDGMENT AS TO HIS EXTREME TEMPERATURES CLAIM. ...................................................................... 6

IV.   THE GOVERNMENT DOES NOT PREVAIL ON ANY OF MR. SCHULTE'S CLAIMS. ............................................................................................................ 9

**CONCLUSION** .............................................................................................................. **10**

i

## TABLE OF AUTHORITIES

**Cases**

*Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460 (S.D.N.Y. 1998)......................................................... 5

*Berkovitz v. United States*, 486 U.S. 531 (1988) ............................................................................ 2

*Coulthurst v. United States*, 214 F.3d 106 (2d Cir. 2000) ............................................................... 2

*F.D.I.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 205 F.3d 66 (2d Cir. 2000)........................... 6

*Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005)............................................................. 5

*Rivera v. Federal Bureau of Prisons*, 2018 WL 11312146 (S.D.N.Y. Dec. 14, 2018) .................. 1

*Smith v. United States,* 207 F. Supp. 2d 209 (S.D.N.Y. 2002) ....................................................... 9

*United States v. Gaubert*, 499 U.S. 315 (1991) ............................................................................. 2

## **ARGUMENT**

Mr. Joshua Schulte's cross-motion for summary judgment on liability for his sewage and temperature claims should be granted.  The Federal Bureau of Prisons ("BOP") has a duty to meet the specific standards required by its policies and to safeguard the inmates in its care.  It is undisputed that its negligence exposed Mr. Schulte to sewage and excessive temperatures, causing him physical injury.  The Government's attempt to shield itself from liability through the discretionary function exception ("DFE") is unavailing.  The DFE is inapplicable where, as here, the BOP (1) admits the exception does not apply to the sewage claim and (2) violated a mandatory policy requirement to maintain temperatures throughout the facility within a specified range.  The BOP breached its duty of care to Mr. Schulte, and his cross-motion for partial summary judgment should be granted.

**I.    THE DISCRETIONARY FUNCTION EXCEPTION DOES NOT PROTECT THE BOP FROM ITS NEGLIGENCE IN THIS CASE.**

The Government stresses that the DFE bars Federal Tort Claims Act ("FTCA") claims concerning the BOP's facility maintenance. *See* Gov't Reply Mem. & Opp'n ("Gov't Opp'n") 1–2, ECF No. 125; ECF No. 118 ("Gov't Br.") 13–14 (citing out of circuit case law).  But this assertion mischaracterizes Mr. Schulte's claims and misreads the law.  Mr. Schulte does not present a challenge to the facility's maintenance, or lack thereof—he presents a record of the Metropolitan Correctional Center in Manhattan's ("MCC") failure to meet its duty to safekeep inmates and prevent foreseeable injury. *See* Pl.'s Mem. Supp. Mot. Summ. J. & Opp'n ("Pl.'s Br.") 14–16, 18–21; *see also Rivera v. Federal Bureau of Prisons*, 2018 WL 11312146, at *11 (S.D.N.Y. Dec. 14, 2018) (explaining the BOP's statutory duty).  His negligence claim regarding extreme temperatures arises from BOP actions that were *inconsistent* with *mandatory* policies, not judgment calls. *See* Pl.'s Br. 17–18.  As for his claim of a sewage leak on October 30–31, 2020

1

("October 30"), the Government concedes that the DFE does not bar it. *See* Gov't Opp'n 8 n. 4, ECF No. 125.

The BOP temperature policies are mandatory, not subject to staff discretion.  Mr. Schulte's temperature claim arises from the failure to meet specified standards set out in official policy. "[T]he BOP was obligated to comply with its own policy" to maintain temperatures within a few degrees on either side of the targeted set points of "76 degrees Fahrenheit in the cooling season and 68 degrees Fahrenheit in the heating season." *See* Gov't Opp'n 3, ECF No. 125; Martin Decl., Ex. Q, BOP Facilities Operations Manual, at BOP000690–91.  Because the BOP violated this policy which "mandates particular conduct . . . there will be no shelter [under the DFE] from liability because there is no room for choice and the action will be contrary to policy." *United States v. Gaubert*, 499 U.S. 315, 324 (1991); *see also Berkovitz v. United States*, 486 U.S. 531, 536 (1988) ("[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.").  The MCC's divergence from its policy was not a contestable judgment call, but rather a negligent breach of its defined duty.

The DFE furthermore does not shield conduct that arises from the failure to take sufficient care and is neither "susceptible to policy analysis" nor "'considerations of public policy.'" *See Coulthurst v. United States*, 214 F.3d 106, 109 (2000) (quoting *Gaubert*, 499 U.S. at 322–23; *Berkovitz*, 486 U.S. at 536–37).  Preventing defendants from abusing the DFE as a shield for clear negligence is at the heart of the negligent guard theory, *see id.* at 110 ("[A]lmost every act involves some modicum of discretion regarding the manner in which one carries it out. Such a result ["shielding almost all government negligence from suit"] is not required by the language of the DFE and would undercut the policy aims at the heart of the FTCA."), as Mr. Schulte has

2

consistently argued. *See* Pl.'s Br. 11.  Because the DFE does not protect the BOP's negligence here, this Court has jurisdiction to award Mr. Schulte summary judgment as to both his claims.

## II.    MR. SCHULTE SHOULD BE AWARDED SUMMARY JUDGMENT BECAUSE THE BOP NEGLIGENTLY EXPOSED HIM TO SEWAGE.

This Court should grant Mr. Schulte's cross-motion for summary judgment as to liability for negligent exposure to sewage.  It is undisputed that he was left in his cell with sewage for hours and suffered physical injuries as a result.  The Government's effort to reframe his experience as a "plumbing claim" by focusing on maintenance efforts during the decline of the MCC, *see* Gov't Opp'n 7–8, ECF No. 125, misses the point.  Even if the under-resourced staff had been heroic and the infrastructure had been sound, characterizations unsupported by the record, the BOP remains liable because Mr. Schulte remained locked in his cell on October 30, being sickened by sewage, when he should have been moved. *See* Pl.'s Br. 14–16.  Rather than following the BOP policy of promptly moving inmates when "inoperable issues arise," *see* Martin Decl., Ex. I, Dep. of Edwin Matos ("Matos Dep.") 101:16-25, 102:2-3, the BOP breached its duty of care to him. *See* Pl.'s Br. 11–12 (discussing the BOP's statutory duty).

The record corroborates Mr. Schulte's account of the October 30 sewage leak, which describes events that satisfy all the elements of a New York negligence claim. *See* Martin Decl., Ex. B, Interrog. Resps. of Joshua Schulte ("Schulte Interrog.") Nos. 29–43, 53–59, 63.  The documentary evidence includes a BOP work order activated on November 3, 2020, referencing a leak from a failing wax toilet seal in Cell 304 ("Cell 4").[1] *See* Martin Decl., Ex. P, 10 South Work Order Forms, at BOP000706 (work order listing "wax seal" as the materials used and containing

---

[1] It is not atypical for the work order to be activated the following Tuesday (November 3, 2020), despite the leak beginning on Friday (October 30, 2020).  No facilities staff, including plumbing foremen, worked nights or weekends. *See* Ex. J, Alvarado Dep. 16:11-25; Ex. I, Matos Dep. 83:9-16.  Work order requests entered on weekends would typically be activated the following week. *See* Ex. L, Licon-Vitale Dep. 87:20–88:4; Ex. F, Nobile Dep. 150:2–151:2.

a note upon completion that the staff "Removed & reset toilet with new wax seal. Tested for leaks."). MCC staff testified that *sewage* leaks from a broken wax seal. *See* Martin Decl., Ex. J, Dep. of Kenneth Alvarado ("Alvarado Dep.") 69:2-7; Martin Decl., Ex. F, Dep. of Christopher Nobile ("Nobile Dep.") 152:6-14. The work order requesting to replace the leaking wax seal and the depositions of the BOP staff are undisputed evidence that sewage leaked into Cell 4 that night.

Though the Government attempts to recast this as a mere water leak, *see* Gov't Opp'n 9, ECF No. 125, that is speculative and unsupported by the record. The work order was activated four days after the leak began and three days after the cell was last inhabited. Its reference to "water" does not cast Mr. Schulte's testimony and the other reported evidence of a sewage leak on October 30 into dispute. It is also notable that this order was classified as priority 2, which a government witness characterizes as a "priority" for the "same day." *See* Ex. P, at BOP000706; Ex. J, Alvarado Dep. 30:15-17.

It is further undisputed that Mr. Schulte was not moved out of Cell 4 until the following morning, which was both long after he should have been moved to limit his exposure to sewage and long before the typical 21-day cycle of cell habitation had run. *See* Martin Decl., Ex. S, Inmate Quarters History, at BOP000035; Martin Decl., Ex. L, Dep. of Marti Licon-Vitale ("Licon-Vitale Dep.") 56:19-25. Protocol was to rotate 10 South inmates to a different cell every 21 days. *See* Ex. L, Licon-Vitale Dep. 56:19-25; Ex. I, Matos Dep. 100:23-24. Yet, the 10 South inmate quarters logs reflect that Mr. Schulte was moved out of Cell 4 only three days after he arrived there. *See* Ex. S, at BOP000035. Thus, the BOP's own actions contradict its claim that this was a "non-urgent water leak." *See* Gov't Opp'n 11, ECF No. 125.

Sewage leaked into Mr. Schulte's cell and, despite the injurious conditions and clear rules mandating his immediate removal, he was not moved for hours. The Government's effort to

minimize his injury must be viewed in light of its failure to preserve and produce the Form 291 medical records created after daily rounds. *See* Gov't's Resp. to Pl.'s Statement of Undisputed Material Facts ("Gov't 56.1 Response") ¶ 34, ECF No. 126 (conceding that the Government "could not locate any records titled 'Form 291' with respect to Schulte, and therefore, did not produce anything titled 'Form 291'"). These digital documents were generated by the physician's assistants who regularly distributed medication and had daily contact with those in 10 South. *See id.*; Martin Decl., Ex. O, Dep. of Robert Beaudouin 33:12-19; 34:5-18. Their absence from the record casts the Government's effort to dismiss Mr. Schulte's injuries in a harsh light.

The Government improperly relies on two distinguishable cases, *Jeffreys v. City of New York*, 426 F.3d 549, 554–55 (2d Cir. 2005), and *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 468–71 (S.D.N.Y. 1998), which involve facially inadequate records of incomplete or inconsistent testimony without any corroborating evidence. *See* Gov't Opp'n 9, ECF No. 125. In *Jeffreys*, the plaintiff lost consciousness and "infer[red], but [did] not recall" subsequent events. *See Jeffreys*, 426 F.3d at 551, 553 (evaluating § 1983 claim where plaintiff's testimony "differ[ed] substantially" from witness accounts). Unlike the plaintiff in *Pico*, Mr. Schulte's allegations as to the BOP's actions and his resulting injuries on October 30 remain consistent with his initial account. *See Pico*, 994 F. Supp. at 47–71 (weighing on the credibility of a constitutional claim where the plaintiff's allegations were contradictory and "changed a number of times"). In this case, the record reflects Mr. Schulte's direct experience, and there is corroborating evidence that is undisputed as to all material facts—the broken wax seal in his toilet resulted in a sewage leak in his cell. The Government's attempt to analogize Mr. Schulte's record to cases in which the plaintiffs' factual assertions were inconsistent or lacked a basis in probative evidence must be rejected.

5

The Government also argues that because one staff member has no recollection of this event, Mr. Schulte's account is in dispute. *See* Gov't Opp'n 10, ECF No. 125.  Witness memory lapses do not, however, create triable issues of material fact. *See F.D.I.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 205 F.3d 66, 75 (2d Cir. 2000).  Further, the Government's assertion that Matos *would have* remembered a sewage leak, *see* Gov't Opp'n 10, ECF No. 125, is an improper inference and insufficient to equate to a denial of any such leak happening on October 30.

Ultimately, no genuine issues remain as to all material facts regarding the BOP's negligence on October 30, so Mr. Schulte should be awarded summary judgment on this claim.  As explained above, any dispute regarding the state of plumbing in the MCC is immaterial.  Taken together with Mr. Schulte's account, the following undisputed facts are sufficient for a reasonable factfinder to determine that the BOP is liable for breaching its duty of care: Mr. Schulte's toilet had a broken wax seal, *see* Ex. P, at BOP000706; this type of plumbing issue causes sewage to leak, *see* Ex. J, Alvarado Dep. 69:2-7, Ex. F, Nobile Dep. 152:8-14; Mr. Schulte was left in his cell for more than 14 hours with a sewage leak, *see* Ex. B, Schulte Interrog. Nos. 29, 53; and the leak must have been severe enough to cause him to be removed from Cell 4 after only a few days in that cell, *see* Ex. S, at BOP000035.

## III.    MR. SCHULTE SHOULD BE AWARDED SUMMARY JUDGMENT AS TO HIS EXTREME TEMPERATURES CLAIM.

Mr. Schulte is entitled to summary judgment for the BOP's failure to comply with its temperature policy.  This duty is clear—it was obligated to maintain the temperature in "[a]ll spaces . . . as close to the targeted set point as possible." *See* Ex. Q, at BOP000690–91. In its opposition, the Government broadly asserts that (1) the temperature at the MCC complied with the BOP policy, and (2) BOP staff took reasonable steps to address complaints regarding the temperature. *See* Gov't Opp'n 2, ECF No. 125.  Neither argument is supported by the record.

6

Only Mr. Schulte and the other people confined in 10 South experienced the cold nights and hot days in their cells. There is nothing in the record to dispute that Mr. Schulte endured extreme cold temperatures in his cells at night. The BOP was aware the cells in 10 South were especially cold overnight. *See* Martin Decl., Ex. M, Dep. of Maurice Bailey 64:16–65:14 (the BOP provided blankets and clothes after receiving complaints regarding the cold in 10 South cells), 63:11-16 (testifying how staff experienced particularly cold temperatures during their night rounds); Ex. B, Schulte Interrog. No. 73; Ex. I, Matos Dep. 128:18-24 (testifying that it was colder than 68 degrees in 10 South).

Yet, there are neither temperature readings from Mr. Schulte's cells at night, nor any readings from the 2018–2019 winter or October 2020 to February 2021.[2] *See generally* Martin Decl., Ex. GG, Temperature Readings. Therefore, Mr. Schulte's testimony about injurious night-time temperatures inside his cell remains undisputed. *See* Ex. B, Schulte Interrog. No. 67, 80. His "subjective experience" of freezing temperatures in his cell overnight, despite the Government's assertion to the contrary, *see* Gov't Opp'n 3, ECF No. 125, is necessary to assess the BOP's adherence to its policies because, under BOP policy, occupants cannot "experience a range of temperatures in their space that is [more than] a few degrees on either side of the targeted set point." *See* Ex. Q, at BOP000690–91.

The temperature readings taken are not "objective measurements," as alleged by the Government. *See* Gov't Opp'n 7, ECF No. 125. Christopher Nobile, who was responsible for taking the temperatures, concedes some readings were taken with the "wrong tool" and did not provide "a correct reading." *See* Ex. F, Nobile Dep. 164:20–165:13. The ambient temperature

---

[2] Per the BOP Policy, winter months were from October to May. *See* Ex. Q, at BOP000690. The temperature readings recorded by the Government inside Mr. Schulte's cell are from February 16, 2021 to May 21, 2021. *See* Gov't 56.1 Response ¶ 64, ECF No. 126. Moreover, the temperatures from cell to cell are not consistent, as there were six cells through which Mr. Schulte was rotated. *See* Schulte Interrog. Nos. 9, 11, 70, 147.

reader had no standard practice and was used by inexperienced people. *See id.* at 163:23–164:8 (testifying that he made the decisions regarding temperature readings himself and "there was no rhyme or reason" to the process), 167:3-7 ("Some of the people didn't know if the date was wrong, so sometimes you might have a date wrong or something[.]").  Nobile did not know how to calibrate this temperature reading machine. *See id.* at 170:4-11 (testifying how he would purchase a new device because he "couldn't find a place that would calibrate those machines.").  Moreover, the cases cited by the Government, *see* Gov't Opp'n 7, ECF No. 125, where courts have granted summary judgment to defendants based on "objective measures" are for constitutional violations with a higher legal standard than negligence.

There is no dispute the MCC heating and cooling system did not allow BOP staff to control the temperature and thus remain within the requisite range. *See* Nobile Dep. 72:25–73:7; Martin Decl., Ex. W, MCC Building Assessment Report, at BOP001913.  A reasonable factfinder could conclude the cells in 10 South were injuriously cold in winter and hot in summer, given the record evidence from Mr. Schulte, other 10 South inmates, and staff noting the extreme temperatures. *See* Ex. B, Schulte Interrog. Nos. 66, 67, 69, 102, 103, 106, 107; Martin Decl., Ex. Y, Mr. Schulte Administrative Remedy History, at BOP001586; Martin Decl., Ex. CC, Mr. Schulte Administrative Remedy Requests, at BOP000258; Martin Decl., Ex. C, Interrog. Resps. of Sajmir Alimehmeti Nos. 2–5; Martin Decl., Ex. D, Interrog. Resps. of Mirsad Kandic No. 2; Martin Decl., Ex. E, Interrog. Resps. of Sayfullo Habibull Saipov Nos. 2–5.  The fact that the heating and cooling could not be controlled except by turning the system on or off supports Mr. Schulte's experience and does not turn this into a dispute about maintenance policies.

The Government's reliance on *Smith* is unavailing.  In that case, the Court dismissed plaintiff's complaint during summary judgment after finding that the Government "promptly

respond[ed] to plaintiff's complaints and adequately maintain[ed] the facility." *See Smith v. United States,* 207 F. Supp. 2d 209, 215 (S.D.N.Y. 2002).  Although the BOP is not responsible for making all inmates "comfortable," it has a duty to provide "ordinary care." *See id.* at 216.

Here, the BOP took only two relevant actions: (1) providing blankets and additional clothes and (2) taking select temperature readings. *See* Gov't Opp'n 2, ECF No. 125.  It did not address the open louvers in the exercise room, *see* Gov't Statement of Undisputed Material Facts ¶ 95, ECF No. 119, or otherwise remedy the temperature problems that persisted for years.  The BOP never measured the temperature in 10 South cells overnight, when temperatures were particularly low. *See generally* Ex. GG.  As of October 2020, the BOP had not replaced its reheat coils or HVAC system, and the MCC did not have a temperature monitoring system. *See* Martin Decl., Ex. EE, Decision Paper Closing MCC, at BOP003028; Ex. W, at BOP001913.  Ultimately, the BOP failed "to act with due care to keep its facilities temperate." *See Smith*, 207 F. Supp. 2d at 216.

As a result of the extreme temperatures, Mr. Schulte experienced physical injuries, including migraines, sleep deprivation, and pain in his extremities, as well as psychological harm. *See* Ex. B, Schulte Interrog. Nos. 85–86, 91, 106, 114.  Accordingly, this Court should enter summary judgment on the issue of liability for Mr. Schulte on his temperature claim.

## IV.     THE GOVERNMENT DOES NOT PREVAIL ON ANY OF MR. SCHULTE'S CLAIMS.

In addition to Mr. Schulte's temperature and sewage claims, the DFE does not apply to his remaining claims regarding poor air quality, deprivation of sleep, and deprivation of exercise.  The DFE does not bar Mr. Schulte's deprivation of exercise claim because it stems from a negligent and unjustified execution of the BOP policy directing one hour per day in the recreation room. *See* Pl.'s Br. 25–26.  The MCC was required to meet a minimum standard of air quality, not subject to BOP discretion, *see* Ex. Q, at BOP000691, BOP000565, and there is no policy justification for

sleep deprivation.    Therefore, this Court should grant Mr. Schulte summary judgment on the sewage and temperature claims and deny the Government's motion for summary judgment on the remaining three claims, given material factual disputes as to whether: (1) the MCC staff took precautions to protect inmates from poor air quality; (2) mold was present in 10 South; (3) Mr. Schulte was consistently deprived of his allotted exercise time; and (4) the lighting in Mr. Schulte's cell was bright enough to disrupt his sleep. *See* Pl.'s Br. 21–26.   A fact finder must resolve the factual disputes, so the Government's motion should be denied in its entirety.

## CONCLUSION

WHEREFORE, it is respectfully submitted that the Court should grant the Plaintiff's motion for summary judgment as to liability on the two causes of action herein, deny the Defendant's summary judgment motion, and grant such other and further relief as the Court deems just and proper.

Date:   New York, New York
        May 8, 2026

Respectfully submitted,

*/s/Michael W. Martin*

*On the Memo*:                    MICHAEL W. MARTIN
Macie Lavender                    IAN WEINSTEIN
Basha Goldwater
Pierina Hernandez Luperdi         Lincoln Sq. Legal Srvs., Inc.
Sheena Qiao                       150 W. 62nd St., 9th Floor
*Legal Interns*                   New York, New York 10023
                                  (212) 636-6934
                                  mwmartin@lsls.fordham.edu
                                  *Attorneys for Mr. Joshua Adam Schulte*

10

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Civil Rule 7.1(c), the undersigned hereby certifies that, measured by the word processing program used to prepare this brief, this brief complies with the word-count limitation of the rule, which is a maximum of 3,500.  Excluding the caption, table of contents, table of authorities, signature blocks, or any required certificates, but including material contained in footnotes or endnotes, there are 3,295 words in this memo.

Dated: New York, New York
  May 8, 2026

         */s/ Michael W. Martin*
         MICHAEL W. MARTIN
         Lincoln Square Legal Services, Inc.
         150 W 62nd St, 9th Floor
         New York, New York 10023
         (212) 636-6934
         mwmartin@lsls.fordham.edu