UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSHUA ADAM SCHULTE,

Plaintiff,

-v-

UNITED STATES OF AMERICA,

Defendant.

21-CV-4042 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

Joshua A. Schulte, a former employee of the Central Intelligence Agency ("CIA"), was arrested in 2017 and later convicted of various offenses, including a host of charges relating to the largest leak of classified information in CIA history and charges relating to child pornography; in February 2024, he was sentenced to forty years' imprisonment. *See* 17-CR-548 (JMF). From 2018 until October 2021, Schulte was detained in the now-shuttered Metropolitan Correctional Center ("MCC"), where, for a time, he was subject to "Special Administrative Measures" and held in unusually restrictive conditions designed to prevent him from disclosing additional classified information. *See id.* ECF No. 92.

This case relates to the conditions of Schulte's confinement while he was detained at the MCC. Specifically, Schulte brings various claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. *See* ECF No. 49 ("Am. Compl."), ¶¶ 7, 48. In an earlier Memorandum Opinion and Order, familiarity with which is presumed, the Court dismissed most of Schulte's claims, but it granted him leave to replead a few of them. *See* ECF No. 48, at 8. With the assistance of *pro bono* counsel, Schulte filed an Amended Complaint, which the Government moved to dismiss, *see* ECF No. 54. The Court denied the Government's motion in

substantial part. *See* ECF No. 64, at 6; *see also id.* at 1 n.1 (granting the motion as unopposed insofar as the Amended Complaint sought declaratory or injunctive relief). Six claims remain:

- Count I: "Damages for Negligence for Confinement in Cell Flooded with Sewage"
- Count II: "Damages For Negligent Exposure to Extreme Temperatures"
- Count III: "Damages For Negligent Deprivation of Sleep"
- Count IV: "Damages For Negligent Prohibition of Exercise"
- Count V: "Damages For Negligent Exposure to Dangerous Air Quality"
- Count VI: "Damages For Negligent Pattern and Practice of Failing to Provide Adequate Sanitation, Breathable Air, and Other Rudiments"

Am. Compl. 10-17. The Government now moves for summary judgment on all six counts. *See* ECF No. 112. Schulte cross-moves for partial summary judgment as to Counts I and II and otherwise opposes the Government's motion. *See* ECF No. 120.

For the reasons set forth below, the Court DENIES the parties' cross-motions for summary judgment on Counts I and II but GRANTS the Government's motion for summary judgment on Counts III-VI.

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In

moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where, as here, both sides move for summary judgment, the Court is "required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011).

## SUBJECT-MATTER JURISDICTION

Section 2680(a) of Title 28 of the United States Code provides that the FTCA does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." The Government argues that this exception — known as the "discretionary function exception" or "DFE" — to the FTCA's

limited waiver of sovereign immunity deprives the Court of subject-matter jurisdiction over five of Schulte's remaining six claims, to wit, all but Count I. *See, e.g.*, *Simmons v. United States*, 764 F. App'x 98, 100 (2d Cir. 2019) (summary order) ("Where the DFE applies, no subject matter jurisdiction exists over the FTCA claim."); *see also* ECF No. 118 ("Def.'s Mem."), at 10-14 & n.2. To fall within the DFE, "(1) the acts alleged to be negligent must be discretionary, in that they involve an element of judgment or choice and are not compelled by statute or regulation, and (2) the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis." *USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia*, 681 F.3d 103, 111-12 (2d Cir. 2012) (internal quotation marks omitted). "[W]hen a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," however, "the [DFE] will not apply." *Berkovitz by Berkovitz v. United States,* 486 U.S. 531, 536 (1988). Further, there is an exception to the exception: the "negligent guard theory," which provides that the DFE does not extend to a jail or prison guard's "lazy or careless failure to perform his or her discretionary duties." *Scott v. Quay*, No. 19-CV-1075, 2020 WL 8611292, at *13 (E.D.N.Y. Nov. 16, 2020) (internal quotation marks omitted); *accord Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 476 (2d Cir. 2006) (per curiam). Because the DFE implicates subject-matter jurisdiction, the Court addresses it first. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94-95 (1998).

**A. Count II: Exposure to Extreme Temperatures**

As to Schulte's claim concerning exposure to extreme temperatures (Count II), the parties agree that (1) Bureau of Prisons ("BOP") "policy requires that the temperature at BOP facilities be targeted to 76 degrees Fahrenheit in the cooling season . . . and 68 degrees in the heating season," ECF No. 123 ("Pl.'s Rule 56.1 Resp."), ¶ 106; (2) "BOP policy further provides that[]

[a]ll spaces will be maintained as close to the targeted set point as possible," *id.* ¶ 107; and (3) "occupants may experience a range of temperatures in their space that is *a few degrees* on either side of the targeted set point," *id.* (emphasis added). Schulte further alleges that "[i]nmates and BOP staff experienced temperatures more than a few degrees from the target temperatures." *Id.* ¶ 108; *see also, e.g.*, ECF No. 124 ("Pl.'s Rule 56.1 Stmt."), ¶ 67 ("At one point, in Mr. Schulte's cell, it was cold enough to freeze water in a cup overnight."). That is, he alleges that the Government *violated* BOP's binding policy. Accordingly, the Court concludes that the DFE does not shield the Government from liability on Schulte's extreme-temperature claim. *See Berkovitz by Berkovitz*, 486 U.S. at 536. *Compare* Pl.'s Rule 56.1 Resp. ¶¶ 106-08 (describing BOP policy's precise guidelines), *with Gongora Hinestroza v. United States*, No. 25-CV-61, 2025 WL 1588349, at *8 (S.D.Tex. June 4, 2025) (applying the DFE to an extreme-temperature claim where the applicable policy established only that "officers/agents should maintain hold room temperature within a reasonable and comfortable range").

**B. Counts III & V: Sleep Deprivation and Air Quality**

Schulte has arguably forfeited any argument that the DFE does not apply to Counts III and V by failing to respond to the Government's arguments on that score in his cross-motion and opposition. *See* ECF No. 125 ("Def.'s Reply"), at 12-13 (highlighting Schulte's failure to respond); ECF No. 122 ("Pl.'s Mem."), at 14, 17-18, 26 (making specific arguments as to the DFE's applicability to the sewage, temperature, and exercise claims but not to the sleep deprivation and air quality claims); *see also Conklin v. U.S. Immigr. & Customs Enf't*, 661 F. Supp. 3d 239, 264 (S.D.N.Y. 2023) ("Generally, an argument not addressed in an opposition to a summary judgment motion is considered waived."). In fact, Schulte's only discussion of the DFE in relation to Counts III and V is a single sentence in his reply brief, the full extent of which

is that "[t]he MCC was required to meet a minimum standard of air quality, not subject to BOP discretion," ECF No. 127 ("Pl.'s Reply"), at 9 (citing ECF No. 121-17 ("BOP Facilities Operations Manual"), at BOP000691, BOP000565), and that "there is no policy justification for sleep deprivation," *id.* at 9-10. These perfunctory statements are not sufficient to present the argument that the DFE does not apply. *See, e.g.*, *Lima v. Hatsuhana of USA, Inc.*, No. 13-CV-3389 (JMF), 2014 WL 177412, at *1 (S.D.N.Y. Jan. 16, 2014) ("It is well established that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (cleaned up)). They also fall short.

First, Schulte's argument that "there is no policy justification for sleep deprivation," Pl.'s Reply 9-10, misses the mark. In Count III, Schulte alleges that the Government's decision to leave on a light overnight in each of 10 South's cells negligently deprived him of sleep. *See* Pl.'s Mem. 23-25. As relevant here, the parties agree that "BOP policy with respect to lighting states that '[d]uring non-working hours, lighting is to be eliminated, except where necessary for safety and security.'" Pl.'s Rule 56.1 Resp. ¶ 128. They also agree that, "[e]ven when the main lights were off, a . . . smaller low-wattage bulb remained on inside one of the light panels in the cells in 10 South." *Id.* ¶ 132. And Schulte does not dispute that "[l]eaving this . . . light on in the cells in 10 South was intended to aid in maintaining inmate security and safety," insofar as it "allowed MCC staff to see inside the inmates' cells at nighttime, even when the remaining lights were turned off." *Id.* ¶¶ 133-34. Further, the parties agree that the low-wattage bulb "provided for video visibility of the cells in 10 South when the main lights were shut off," thereby "enabl[ing] staff to monitor the inmates in that unit." *Id.* ¶¶ 136-37. Based on these undisputed facts, it follows that the Government's decision to leave a bulb illuminated in each of 10 South's cells was a decision involving inmate security to which the DFE applies. *See D.A. v. United States*,

663 F. Supp. 3d 715, 739 (W.D. Tex. 2023) (concluding that "determinations of how . . . lighted holding areas should be during nighttime hours are susceptible to policy analysis" and "touch on economic and security concerns that the court is not entitled to second-guess"); *see also, e.g., Rhodes v. Chapman*, 452 U.S. 337, 349 n.14 (1981) ("[A] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators."); *Chen v. United States*, 9-CV-2306 (ARR), 2011 WL 2039433, at *8 (E.D.N.Y. May 24, 2011) (collecting cases for the proposition that "prison decisions regarding security matters are grounded in public policy"), *aff'd sub nom. Qin Chen v. United States*, 494 F. App'x 108 (2d Cir. 2012).

Second, Schulte's only support for the proposition that MCC staff were required to meet minimum air quality standards is a citation to two pages in the BOP Facilities Operation Manual. *See* Pl.'s Reply 9. Schulte does not identify any relevant information on those pages, and, as best the Court can tell, the only material evidence therein is a statement that "[i]nstitutions must provide minimum ventilation rates to maintain human comfort in accordance with the Guide Book for the American Society of Heating and Refrigeration and Air Conditioning Engineers." BOP Facilities Operations Manual, at BOP000691. If that is the relevant standard, the DFE would almost certainly apply. *See Gongora Hinestroza*, 2025 WL 1588349, at *8. In any event, Schulte neither alleges nor argues that the MCC failed to comply with the standards set forth in the Guide Book for the American Society of Heating and Refrigeration and Air Conditioning Engineers. *See* Pl.'s Mem. 21-23; Pl.'s Reply 9-10. Indeed, Schulte does not provide *any* information about the content of those standards from which the Court could determine whether

the MCC was non-compliant. *See generally* Pl.'s Mem.; Pl.'s Reply; Pl.'s Rule 56.1 Resp.; Pl.'s Rule 56.1 Stmt. This argument is thus forfeited for lack of development.[1]

**C. Count IV: Deprivation of Exercise**

Schulte argues that "[t]he guards' denial of recreation time falls under the negligent guard theory carve-out," such that "the Government's assertion of the DFE must be rejected" as to Count IV. Pl.'s Mem. 26. But the Court disagrees. In relevant part, the parties agree that "BOP policy was for 10 South inmates to be permitted to utilize the recreation room for one hour per day." Pl.'s Rule 56.1 Resp. ¶ 187. Although Schulte disputes whether this policy was consistently followed, the only factual allegation he makes in that connection is that, "*when there were staffing shortages*, officers would not take inmates to the recreation room for three plus days at a time." *Id.* (emphasis added). Prison officials' decisions with respect to whether and how to allocate limited staff time are a matter of discretion. *See, e.g., Leibowitz v. United States*, No. 23-CV-5677 (LGD), 2025 WL 2252386, at *12 (E.D.N.Y. July 30, 2025) (collecting cases for the proposition that "how an agency chooses to focus the attention of its employees is the prototypical example of a policy decision"); *Blecher v. Holy See*, 146 F.4th 206, 218 (2d Cir. 2025) (citing favorably to *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003), for its holding that "staffing allocation fell within discretionary function exception to the FTCA"). As a result, Schulte's fourth count is barred by the DFE.

---

[1] It is not clear to what Schulte intended to point on page 565 of the BOP Facilities Operations Manual in support of his minimum-standards argument. *See* Pl.'s Reply 9. Insofar as he meant to rely on the Manual's listing of "Environmental Protection Agency (EPA) Guidelines for Air and Water Quality and applicable state and local air and water quality environmental regulations" as a reference, BOP Facilities Operations Manual, at BOP 000565, the point is the same: Schulte says nothing about those regulations or the MCC's compliance with them.

**D. Count VI: Pattern and Practice**

Finally, the Court agrees with the Government, *see* Def.'s Reply 14, that Schulte's sixth claim, in which he alleges that the Government maintained a pattern or practice of "Failing to Provide Adequate Sanitation, Breathable Air, and Other Rudiments," Am. Compl. 16-17, fails as a matter of law.[2] For starters, Schulte does not cite, and the Court has not found, any case allowing an FTCA claim to proceed on such a "pattern or practice" theory. In addition, although Schulte's legal theory is not especially clear, insofar as it is premised on a general approach to inmate housing and care, it would appear to be barred by the DFE. As relevant here, 18 U.S.C. § 4042(a) requires BOP facilities to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." That statute "does not direct the BOP how to fulfill its duties, nor does [it] mandate particular conduct by the BOP"; instead, it "gives the BOP officials great discretion to administer their duties as they see fit." *Ojo v. United States*, No. 16-CV-4112 (MKB) (LB), 2019 WL 3852391, at *7 (E.D.N.Y. Aug. 15, 2019), *report and recommendation adopted* 2019 WL 4602823 (E.D.N.Y. Sep. 23, 2019). That grant of discretion shields the Government from liability pursuant to the DFE, "whether or not the discretion involved [was] abused," 28 U.S.C.

[2] Schulte correctly observes that the Government failed to address Count VI in its initial brief. *See* Pl.'s Mem. 26. Still, the Government made clear from the start that its arguments concerning the DFE applied to all of Schulte's claims other than Count I, *see* Def.'s Mem. 12 n.2, and fully briefed the validity of Schulte's pattern-or-practice claim in its reply brief, *see* Def.'s Reply 14-15. Moreover, Schulte did not respond to those arguments in his own subsequent reply brief. *See generally* Pl.'s Reply. Granted, Schulte's reply brief should have been cabined to arguments concerning his cross-motion for summary judgment on Counts I and II. But Schulte used that brief to address arguments made by the Government in support of its initial motion for summary judgment on Counts III, IV, and V. *See id.* at 9-10. As a result, the Court concludes Schulte had an adequate opportunity to address the merits of the Government's arguments as to Count VI and so, in its discretion, addresses those arguments. *See Brown v. City of New York*, 862 F.3d 182, 187 (2d Cir. 2017) ("The discretion trial courts may exercise on matters of procedure extends to a decision on whether an argument has been waived.").

§ 2680(a), and would thus seem to encompass Schulte's generalized allegations of "fail[ure] to provide [him] with adequate, safe living conditions." Pl.'s Mem. 26.

**THE MERITS**

All told, then, the Court concludes that it lacks subject-matter jurisdiction over Counts III, IV, V, and VI. Thus, it turns to the merits of Counts I and II.

The Court need not dwell long on the matter, as it concludes that summary judgment cannot be granted in either party's favor because there are disputes of material fact. For example, Schulte limits his claim concerning plumbing issues at the MCC to an allegation that, on October 30, 2020, MCC staff negligently failed to remove him from his cell overnight while sewage leaked out of a toilet therein. *See* Pl.'s Mem. 15. But it is disputed whether any sewage even leaked from the toilet in Schulte's cell on that occasion and whether Schulte suffered any adverse health consequences from the leak in question. *See, e.g.,* Pl.'s Rule 56.1 Resp. ¶¶ 67-69, 71, 73-76, 79; ECF No. 126 ("Def.'s Rule 56.1 Resp."), ¶¶ 19-20, 22-29, 32-33. Similarly, Schulte's second claim concerns his alleged exposure to extreme temperatures in 10 South. Here, there are disputes with respect to whether the temperature in Schulte's cells ever dropped below 63 degrees or above 81 degrees Fahrenheit, let alone to a level "frigid" enough to cause Schulte's alleged injuries. *See* Pl.'s Rule 56.1 Resp. ¶¶ 103, 108-12, 114-18, 121-26; Def.'s Rule 56.1 Resp. ¶¶ 42-46, 49-50, 52-53, 56, 58, 62-68. Because the existence of a sewage leak and exposure to extreme temperatures are central to Schulte's first and second counts, respectively, the Court cannot grant either party summary judgment on those claims. *See, e.g.*, *United States ex rel. DeCarlo v. Kiewit/AFC Enters., Inc.*, 937 F. Supp. 1039, 1042 (S.D.N.Y. 1996).

## CONCLUSION

In sum, the Government's motion for summary judgment is GRANTED as to Counts III, IV, V, and VI, but the parties' cross-motions for summary judgment are DENIED as to Counts I and II. Unless and until the Court orders otherwise, the parties shall submit their proposed Joint Pretrial Order and associated materials (in accordance with Rule 26(a)(3) of the Federal Rules of Civil Procedure and Section 6 of the Court's Individual Rules and Practices in Civil Cases, available at https://www.nysd.uscourts.gov/hon-jesse-m-furman) **within thirty days of the date of this Opinion and Order**. Because this is a non-jury case, those materials must include proposed findings of fact and conclusions of law and the materials identified in Section 6(E) of the Court's Individual Rules. The parties must be prepared to go to trial as soon **as two weeks thereafter**, but the Court will promptly schedule a trial date — or at least a conference to discuss a trial date — after reviewing the parties' submissions. That said, the Court is of the view that the parties should try to settle this case without the need for a trial. To that end, the Court directs the parties to confer immediately about the prospect of settlement, including participation in a settlement conference before Magistrate Judge Cott (or before a mediator appointed by the Court or retained privately). If the parties agree that a settlement conference would be appropriate, they should promptly advise the Court and seek an appropriate extension of the pretrial deadlines.

The Clerk of Court is directed to terminate ECF Nos. 112 and 120.

SO ORDERED.

Dated: November 19, 2026
New York, New York

JESSE M. FURMAN
United States District Judge